**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Mar 11 2013, 9:59 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**AMY KAROZOS**
Greenwood, Indiana

ATTORNEYS FOR APPELLEES:

**PATRICK M. RHODES.**
Indiana Department of Child Services
Indianapolis, Indiana

**ROBERT J. HENKE**
DCS Central Administration
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| In the Matter of the Termination of the Parent-Child Relationship of D.L., minor child, and D.S., mother, | ) ) ) |
| D.S., | ) ) |
| Appellant-Respondent, | ) ) |
| vs. | ) ) No. 49A05-1206-JT-305 |
| INDIANA DEPARTMENT OF CHILD SERVICES, | ) ) |
| Appellee-Petitioner. | ) ) |
| and | ) ) |
| CHILD ADVOCATES, INC., | ) ) |
| Co-Appellee-Guardian Ad Litem | ) |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Marilyn Moores, Judge
The Honorable Julie Cartmel, Magistrate
Cause No. 49D05-1103-JT-864

**March 11, 2013**
**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**KIRSCH, Judge**

D.S. ("Mother") appeals the involuntary termination of her parental rights to her child, D.L., claiming she (1) was denied due process of law and (2) received ineffective assistance of counsel during the termination hearing.

We affirm.

## FACTS AND PROCEDURAL HISTORY

Mother is the biological mother of D.L., born in September 1999.[1] The facts most favorable to the juvenile court's judgment reveal that, in May 2007, the local Marion County office of the Indiana Department of Child Services ("MCDCS") took D.L. into protective custody and placed the child in therapeutic foster care after determining that Mother had failed to provide a safe home environment for D.L. and allowed then-seven-year-old D.L. to fondle and "suck on her breasts" for "comfort." Petitioner's Ex. 3, at 4. Mother was arrested on various felony charges, and later pleaded guilty to Class D felony dissemination of matters harmful to minors. Mother was incarcerated from June through September of 2007.

Meanwhile, in July 2007, D.L. was adjudicated to be a child in need of services ("CHINS"), and following a hearing in August 2007, the juvenile court entered a dispositional order formally removing D.L. from Mother's care and custody. The dispositional order also directed Mother to participate in and successfully complete a variety of tasks and services designed to address her parenting deficiencies and to facilitate reunification of the family. Among other things, Mother was specifically

---

[1] D.L.'s biological father, Da.L. signed a voluntary consent for adoption during the underlying proceedings and does not participate in this appeal. We therefore limit our recitation of the facts to those pertinent solely to Mother's appeal.

ordered to: (1) obtain and maintain stable housing and income to support the family; (2) submit to both a parenting assessment and mental health evaluation and follow all resulting recommendations; and (3) successfully complete home-based counseling services and follow all recommendations of the home-based counselor. Although Mother remained incarcerated at the time of the dispositional hearing, referrals for a psychological evaluation, psychosexual evaluation, and home-based counseling services were made for Mother.

Mother was released from incarceration in early November 2007. Her participation in court-ordered reunification services following her release, however, was sporadic and ultimately unsuccessful. In July 2008, MCDCS filed a petition seeking the involuntary termination of Mother's parental rights to D.L. The termination petition was later dismissed at the request of MCDCS in December 2009 because a pre-adoptive home had not been secured. Mother was thereafter allowed to continue visiting with D.L. until January 2009 when D.L.'s therapist recommended that visitation be discontinued due to adverse behavioral problems exhibited by D.L. following the child's visits with Mother.

In March 2011, MCDCS filed a second petition seeking the involuntary termination of Mother's parental rights. A two-day evidentiary hearing on the termination petition was held in February 2012. During the termination hearing, MCDCS presented evidence showing that, although Mother participated in several court-ordered services including two psychological evaluations, individual counseling as a condition of her probation in the criminal case, and home-based services, she nevertheless had failed to successfully compete and/or benefit from these services. For example, through the

3

testimony of psychologist Mary Papandria ("Dr. Papandria"), MCDCS established that Mother suffers from a "clear delusional paranoid disorder" and also showed "pretty severe" features of bi-polar disorder," all of which would require "extensive psychotherapy" for several years in order to achieve a significant change in Mother's behavior. *Tr.* at 182-83.

Psychologist Michael Johnson ("Dr. Johnson") likewise testified that during his psychosexual evaluation of Mother in 2009, Mother admitted she had allowed D.L. to "kiss and fondle her breasts to comfort him" before the child was removed from her care. *Id.* at 98. Mother also reported to Dr. Johnson that she watched "sadomasochistic pornography and pornography involving bestiality" and used marijuana and alcohol "on a weekly basis." *Id.* at 98-99. Dr. Johnson further informed the juvenile court that his assessment revealed Mother continued to suffer with "delusional disorder," "endorsed a number of bizarre [and] extreme thoughts," and was a "high risk" for recidivism." *Id.* at 102, 110.

Similarly, in recommending termination of Mother's parental rights, MCDCS case manager Christine Myles ("Myles") confirmed that Mother had failed to successfully complete a majority of the court-ordered reunification services. Myles further reported, "I have never received any positive recommendations from providers working with [Mother] or anything that would lead us to believe that she understands the severity of the sexual abuse and that it will not occur again." *Id.* at 149. As for D.L., Myles informed the juvenile court that although D.L. had suffered "severe sexual abuse" and continues to exhibit "slight behavioral issues," the child's overall behavior was being managed well in

4

his current pre-adoptive foster home, and D.L. was bonded with his foster parents. *Id.* at 146, 150.

At the conclusion of the hearing, the juvenile court took the matter under advisement. In May 2012, the juvenile court issued a judgment terminating Mother's parental rights of D.L. This appeal ensued.

## DISCUSSION AND DECISION

When reviewing a termination of parental rights case, we will not reweigh the evidence or judge the credibility of the witnesses. *In re D.D.*, 804 N.E.2d 258, 265 (Ind. Ct. App. 2004), *trans. denied.* Instead, we consider only the evidence and reasonable inferences that are most favorable to the judgment. *Id.* Moreover, in deference to the juvenile court's unique position to assess the evidence, we will set aside the court's judgment terminating a parent-child relationship only if it is clearly erroneous. *In re L.S.*, 717 N.E.2d 204, 208 (Ind. Ct. App. 1999), *trans. denied.*

In terminating Mother's parental rights, the juvenile court entered specific findings and conclusions. When a juvenile court's judgment contains specific findings of fact and conclusions thereon, we apply a two-tiered standard of review. *Bester v. Lake Cnty. Office of Family & Children*, 839 N.E.2d 143, 147 (Ind. 2005). First, we determine whether the evidence supports the findings, and second, we determine whether the findings support the judgment. *Id.* "Findings are clearly erroneous only when the record contains no facts to support them either directly or by inference." *Quillen v. Quillen*, 671 N.E.2d 98, 102 (Ind. 1996). If the evidence and inferences support the juvenile court's decision, we must affirm. *L.S.*, 717 N.E.2d at 208.

The "traditional right of parents to establish a home and raise their children is protected by the Fourteenth Amendment of the United States Constitution." *In re M.B.*, 666 N.E.2d 73, 76 (Ind. Ct. App. 1996), *trans. denied.* These parental interests, however, are not absolute and must be subordinated to the child's interests when determining the proper disposition of a petition to terminate parental rights. *Id.* In addition, although the right to raise one's own child should not be terminated solely because there is a better home available for the child, parental rights may be terminated when a parent is unable or unwilling to meet his or her parental responsibilities. *In re K.S.*, 750 N.E.2d 832, 836 (Ind. Ct. App. 2001).

Before an involuntary termination of parental rights may occur in Indiana, the State is required to allege and prove, among other things:

(B)  that one (1) of the following is true:

(i)  There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.

(ii)  There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.

\* \* \*

(C)  that termination is in the best interests of the child; and

(D)  that there is a satisfactory plan for the care and treatment of the child.

6

Ind. Code § 31-35-2-4(b)(2).[2] The State's burden of proof for establishing these allegations in termination cases "is one of 'clear and convincing evidence.'" *In re G.Y.*, 904 N.E.2d 1257, 1260-61 (Ind. 2009) (quoting Ind. Code § 31-37-14-2).

On appeal, Mother does not challenge the sufficiency of the evidence supporting the juvenile court's findings as to any of the requisite statutory elements of the termination statute cited above. *See* Ind. Code § 31-35-2-4(b)(2). Rather, Mother asserts she was denied due process of law when MCDCS failed to "make 'reasonable efforts' during the CHINS proceedings 'to make it possible for the child to return safely to the child's home as soon as possible'" by failing to refer Mother for certain recommended services. *Appellant's Br.* at 20. Mother also complains that she "was denied the effective assistance of trial counsel in the termination proceeding where [M]other denied many of the allegations of abuse, and her attorney did not object to numerous hearsay statements by the child alleging sexual abuse." *Id.* at 13. We shall address each argument in turn.

## I. Due Process

"The Due Process Clause of the U.S. Constitution and the Due Course of Law Clause of the Indiana Constitution prohibit state action that deprives a person of life, liberty, or property without a fair proceeding." *In re C.G.*, 954 N.E.2d 910, 916 (Ind. 2011). Parental rights constitute an important interest warranting deference and protection, and a termination of that interest is a "'unique kind of deprivation.'" *Id.* (quoting *Lassiter v. Dep't of Soc. Servs.*, 452 U.S. 18, 27 (1981)). Children have an

---

[2] We observe that Indiana Code section 31-35-2-4 was amended by Pub. L. No. 48-2012 (eff. July 1, 2012). The changes to the statute became effective after the filing of the termination petition involved herein and are not applicable to this case.

interest, however, in terminating parental rights that prevent adoption and inhibit establishing secure, stable, long-term, continuous relationships. *Id.* at 917 (citing *Lehman v. Lycoming Cnty. Children's Servs. Agency,* 458 U.S. 502, 513 (1982)).

Notwithstanding the significance of the rights involved herein, it is well-established that a party on appeal may waive a constitutional claim. *McBride*, 798 N.E.2d at 194. In particular, we have previously held that a parent may waive a due process claim in a CHINS or involuntary termination case when it is raised for the first time on appeal. *Id.* at 194-95; *see also In re K.S.*, 750 N.E.2d 832, 834 n.1 (Ind. Ct. App. 2001) (concluding mother waived claim that trial court violated her due process rights in failing to follow statutory requirements governing permanency hearings, case plans, and dispositional orders because she raised constitutional claim for first time on appeal). This is in keeping with the long-standing general rule that an issue cannot be raised for the first time on appeal. *McBride*, 798 N.E.2d at 194.

Here, Mother claims that by "refusing to make a referral for services identified as needed for reunification, [MCDCS] failed to make reasonable efforts to reunify the family" during the CHINS proceedings, thereby denying Mother due process of law. *Appellant's Br*. at 19. The record reveals, however, that although Mother appeared in person and was represented by counsel throughout the duration of the termination hearing, she never objected to proceeding with the termination hearing based on the ground that MCDCS had failed to provide family services in accordance with Indiana Code section 31-34-21-5.5. Nor did Mother or her attorney seek a continuance of the termination hearing based on any other alleged constitutional violation. Rather, Mother

8

has raised this issue for the first time on appeal. We therefore conclude that Mother has waived her constitutional challenge.

Waiver notwithstanding, we pause to acknowledge that this court has repeatedly explained, "[T]he provision of family services is not a requisite element of our parental rights termination statute, and thus, even a complete failure to provide services would not serve to negate a necessary element of the termination statute and require reversal. *In re E.E.*, 736 N.E.2d 791, 796 (Ind. Ct. App. 2000). In addition, we have clarified a parent's responsibility in seeking appropriate services as follows:

> [T]he responsibility to make positive changes will stay where it must, on the parent. If the parent feels the services ordered by the [juvenile] court are inadequate to facilitate the changes needed for reunification, then the onus is on the parent to request additional assistance from the court or [the Indiana Department of Child Services].

*Prince v. Dep't of Child Servs.*, 861 N.E.2d 1223, 1231 (Ind. Ct. App. 2007). The record makes clear that Mother was provided multiple opportunities to participate in various services during the underlying CHINS case, including home-based counseling, parenting and mental health assessments, supervised visitation, and individual counseling as a condition of her probation, in order to address her mental health issues and to learn how to safely parent D.L. The juvenile court properly determined, however, that by the time of the termination hearing, Mother had failed to successfully complete and/or benefit from these available services. The juvenile court also indicated in its termination order that D.L.'s interests would be best served by terminating the parent-child relationship. The record supports the juvenile court's findings and conclusion. We therefore find no error.

9

## II. Ineffective Assistance of Counsel

We now turn to Mother's contention that she was denied effective assistance of trial counsel. Mother contends she was not afforded effective assistance of trial counsel in the underlying termination hearing because her attorney failed to object to the introduction of "numerous hearsay statements" made by the child to various service providers "alleging sexual abuse," thereby "leading to a fundamentally unfair hearing." *Appellant's Br*. at 12.

In Indiana, indigent parents have a statutory right to the assistance of counsel in termination of parental rights proceedings. *See* Ind. Code § 31-32-4-1; Ind. Code § 31-32-2-5. However, when reviewing termination of parental rights cases, our inquiry into whether counsel's assistance was effective does not involve the *Strickland*[3] test used in criminal cases. Rather, the focus of our inquiry is "whether it appears that the parent[] received a fundamentally fair trial whose facts demonstrate an accurate determination." *Baker v. Marion Cnty. Office of Family & Children*, 810 N.E.2d 1035, 1041 (Ind. 2004). Thus, when a parent asserts on appeal that his or her lawyer underperformed, the question is not whether the lawyer might have objected to this or that, but whether the lawyer's overall performance was so defective that the appellate court cannot say with confidence that the conditions leading to the removal of the child from parental care are unlikely to be remedied and that termination is in the child's best interests. *Id*.

Applying this standard to the present case, we find Mother's claim to be unpersuasive. The record makes clear that Mother was zealously represented by counsel

---

[3] *See Strickland v. Washington*, 466 U.S. 668 (1984).

throughout the duration of the underlying termination proceedings. As for her attorney's specific performance during the termination hearing, the evidence demonstrates that Mother's attorney effectively cross-examined witnesses, made and won multiple objections, introduced evidence and exhibits, and proffered passionate and persuasive arguments against granting MCDCS's petition to involuntarily terminate Mother's parental rights. Of particular note, Mother's attorney specifically objected to Dr. Papandria's testimony concerning MCDCS's referral for a psychological evaluation because the referral indicated that Mother had admitted to engaging in certain sexual acts with D.L. *See, e.g., Tr.* at 180.

Also significant, Mother's own testimony during the termination hearing reveals that she admitted to explaining to her home-based counselor, Mary Funderburgh, that she had allowed D.L. to "suck" her breasts for "comfort" like "sucking his thumb" prior to the child's removal from her care. *Tr.* at 82. Thus, any alleged error committed by Mother's counsel in failing to object to testimony concerning Mother's sexual abuse of D.L. was cumulative of Mother's own properly admitted testimony, and therefore harmless. *See, e.g., In re S.W.*, 920 N.E.2d 783, 788 (Ind. Ct. App. 2010) (concluding that any error caused by admission of evidence constitutes harmless error if erroneously admitted evidence is cumulative of other evidence properly admitted).

Based on the foregoing, we conclude that Mother has failed to show she was prejudiced in any way by her attorney's performance during the termination hearing. Moreover, Mother's own admissions provided sufficient evidence to support the juvenile court's judgment. In addition, after carefully reviewing the record, we cannot say that

11

our confidence in the juvenile court's determinations that (1) the conditions leading to D.L.'s removal from Mother's care are unlikely to be remedied and (2) termination of Mother's parental rights is in D.L.'s best interests has been undermined. We therefore find no error.

Affirmed.

MATHIAS, J. and CRONE, J., concur.

12