In The Matter of the Involuntary Termination of the Parent–Child Relationship of E.E., Minor Child and her Mother, Carla Elkins and her Father, Bill Murrell.

Carla Elkins, Appellant–Defendant,

v.

Marion County Office of Family and Children, Appellee–Plaintiff.

No. 49A02–0003–JV–143.

Court of Appeals of Indiana.

Oct. 19, 2000.

Elizabeth Gamboa, Indianapolis, Indiana, Attorney for Appellant.

Tonja V. Kinder, Indianapolis, Indiana, Attorney for Appellee.

## OPINION

BAILEY, Judge

### Case Summary

Appellant–Respondent Carla Elkins (Elkins) appeals the decision of the trial court terminating her parental rights with regard to her daughter E.E. upon petition by the Marion County Office of Families and Children (the OFC). We affirm.

### Issues

Elkins presents two issues for review:

I. Whether there is sufficient evidence to support the termination of her parental rights; and

II. Whether the OFC failed to comply with the Americans With Disabilities Act.

### Facts and Procedural History

Elkins is the biological mother of E.E., born on June 8, 1997, and two other children.[1] On December 18, 1997, Elkins was attending a termination of parental rights proceeding relating to her two older children when Indianapolis Police Department officers discovered then six-month old E.E. alone in a vehicle parked in an Indianapolis parking garage. E.E. was taken to the Marion County Childrens Guardian Home. Medical examinations disclosed that E.E. suffers from a heart condition and digestive reflux, which require consistent monitoring.

On December 23, 1997, the OFC petitioned that E.E. be adjudicated a child in need of services. The OFC alleged that Elkins had an extensive history of mental illness, neglect of her children and an inability to benefit from family services. On April 7, 1999, after a fact-finding hearing, the court declared E.E. a ward of the OFC. E.E. was placed as a foster child in the adoptive home of her older siblings.[2]

On June 23, 1998, pursuant to a Participation Decree, Elkins was ordered to secure a stable source of income and suitable housing, sign an authorization to release her mental health records, participate in parental counseling and assessment, complete a psychological evaluation and visit E.E. on a regular basis. Elkins was also required to contact her caseworker weekly. Over a period of several months, various family services were offered to Elkins to facilitate her compliance with the Participation Decree, with limited success.

On March 18, 1999, the OFC petitioned for the termination of Elkins's parental rights regarding E.E. Hearings were held on August 9, August 23, and August 30, 1999. On November 18, 1999, the court terminated Elkins's parental rights. This appeal ensued.

### Discussion and Decision

#### I. Sufficiency of the Evidence in Support of the Termination Order

##### A. Standard of Review

This court will not set aside the trial court's judgment terminating a parent-child relationship unless it is clearly erroneous. *In re A.A.C.*, 682 N.E.2d 542, 544 (Ind.Ct.App.1997). When reviewing the sufficiency of the evidence to support a judgment of involuntary termination of a parent-child relationship, this court neither reweighs the evidence nor judges the credibility of the witnesses. *Id.* We consider only the evidence that supports the judgment and the reasonable inferences to be drawn therefrom. *Id.*

##### B. Requirements for Involuntary Termination of Parental Rights

Parental rights are of a constitutional dimension, but the law provides for

---

1. The parental rights of E.E.'s putative father were terminated on January 6, 2000. This termination order was not appealed.

2. OFC's plan for the future care of E.E. is adoption by the adoptive parents of her older siblings.

the termination of those rights when the parents are unable or unwilling to meet their parental responsibilities. *In re L.S.,* 717 N.E.2d 204, 208 (Ind.Ct.App.1999), *trans. denied.* The purpose of terminating parental rights is not to punish the parents, but to protect their children. *Id.*

Indiana Code section 31–35–2–4 sets out the elements that the OFC must allege and prove by clear and convincing evidence in order to terminate a parent-child relationship:

(A) One (1) of the following exists:

 (i) the child has been removed from the parent for at least six (6) months under a dispositional decree;

 (ii) a court has entered a finding under IC 31–34–21–5.6 that reasonable efforts for family preservation or reunification are not required, including a description of the court's finding, the date of the finding, and the manner in which the finding was made; or

 (iii) after July 1, 1999, the child has been removed from the parent and has been under the supervision of a county office of family and children for at least fifteen (15) months of the most recent twenty-two (22) months;

(B) there is a reasonable probability that:

 (i) the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied; or

 (ii) the continuation of the parent-child relationship poses a threat to the well-being of the child;

(C) termination is in the best interests of the child; and

(D) there is a satisfactory plan for the care and treatment of the child.

■ The trial court must subordinate the interests of the parents to those of the child when evaluating the circumstances surrounding the termination. *In re A.A.C.,* 682 N.E.2d at 544. Termination of a parent-child relationship is proper where the child's emotional and physical development is threatened. *Id.* The trial court need not wait until the child is irreversibly harmed such that his physical, mental and social development is permanently impaired before terminating the parent-child relationship. *Id.*

## C. Analysis

■ Elkins contends that the OFC presented insufficient evidence to support the termination of her parental rights. Specifically, she argues that the OFC failed to prove that there is a reasonable probability the conditions which resulted in E.E.'s removal will not be remedied or that the continuation of the relationship between Elkins and E.E. poses a threat to E.E.'s well-being.[3] She also claims that the evidence does not establish that the termination of her parental rights is in E.E.'s best interests. We disagree.

The evidence most favorable to the judgment discloses that Elkins has been diagnosed as a paranoid-schizophrenic and has exhibited substantial difficulty coping with parenting and household duties. Social workers assist Elkins with such tasks as banking, grocery shopping, cooking and cleaning, but have recommended her placement in a group home. Elkins was twice hospitalized in 1999 because of suicide ideations.

Dr. Kurt Moehle of Psychological Laboratories of Indianapolis performed a psychological evaluation of Elkins and opined that she would need at least one year of successful psychotherapy and psychopharmacotherapy before she could reliably perform parenting duties. However, Elkins

**3.** Elkins does not challenge the sufficiency of the evidence with respect to the other elements of the termination statute.

has sporadically rejected prescribed medications in favor of herbal remedies and has refused to participate in outpatient therapy since 1997.

Moreover, the OFC presented evidence that Elkins's mental illness has affected her ability to parent effectively. During one visit with E.E., Elkins stated that E.E. was chanting her siblings' names and asking to go home, although E.E. was merely crying. Elkins repeatedly changed her telephone number because of delusional fear that the telephone line was tapped, and failed to notify her caseworker of the changes. Elkins's medical records reflect that she has expressed homicidal ideations toward her children and her parents. Nevertheless, Elkins rejected mental health services offered to her, and opined during her testimony that her actions did not have anything to do with [E.E.] being removed. (R. 3188).

Diana Singleton, a therapist with Midwest Psychological Center who provided home-based counseling services to Elkins, observed a lack of parent-child bonding between Elkins and E.E. and opined that Elkins could not meet the needs of a child. Tammy Skinner (Skinner), a social worker who conducted a parenting assessment in the course of one of Elkins's supervised visits with E.E., concurred in the absence of a parent-child bond between Elkins and E.E. Skinner recommended that reunification of Elkins and E.E. not occur because Elkins exhibited paranoid and delusional thought processes and appeared to be unable to appreciate E.E.'s basic needs for safety and stability. (R. 388).

■ Although the trial court should assess a parent's ability to care for his or her child as of the date of the termination proceeding, the court must also examine the parent's pattern of conduct. *Matter of D.L.W.*, 485 N.E.2d 139, 142 (Ind.Ct.App. 1985). Historically, Elkins has been unable or unwilling to fully cooperate with psychiatric services available to her, such

as outpatient therapy at Gallahue Mental Health Center, and to consistently comply with a course of prescribed medication. The benefits derived from the in-home services extended to Elkins have been inadequate to enable her to effectively bond with and parent E.E.

In contrast, there was evidence that E.E. has thrived in foster care and has developed a strong bond with her biological siblings. Since the foster care placement, E.E. has overcome the developmental delays apparent in her infancy, although she continues to require extraordinary medical intervention. E.E.'s foster parents have adopted E.E.'s siblings and also hope to adopt E.E.

In sum, the OFC established a reasonable probability that the conditions that led to E.E.'s removal will not be remedied and that continuation of the parent-child relationship would pose a threat to E.E.'s well-being. The OFC has also established that termination of the parent-child relationship between Elkins and E.E. is in E.E.'s best interests.

## II. Compliance with the Americans With Disabilities Act

■ Next, Elkins claims that the OFC failed to reasonably accommodate her disability when providing family services, in compliance with the Americans With Disabilities Act (the ADA).[4] Citing *Tyler v. City of Manhattan*, 849 F.Supp. 1429, 1439 (D.Kan.1994), Elkins observes that a violation is established upon a showing that she: is a qualified individual with a disability; was excluded from participation in or denied the benefits of some public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and such exclusion, denial of benefits or discrimination was by reason of her disability. However, Elkins's argument does not extend beyond a recitation of the burden of proof to establish an ADA violation and conclusory language that the

4. 42 U.S.C. § 12101(b).

OFC violated the ADA. She fails to identify any particular service or benefit needed but denied her on account of her mental disability. Moreover, any alleged noncompliance with the ADA by the OFC in the provision of family services would be a matter separate and distinct from the operation of our termination statute. *Stone v. Daviess County Div. Of Children and Family Services*, 656 N.E.2d 824, 830 (Ind. Ct.App.1995), *trans. denied.*

 When an agency opts to provide services to assist parents in improving parental skills, the provision of those services must be in compliance with the ADA. *Id.* The intent of the ADA is to ensure that disabled individuals are not denied the benefits of services provided by the public entity. *Id.* However, the provision of family services is not a requisite element of our parental rights termination statute, and thus, even a complete failure to provide services would not serve to negate a necessary element of the termination statute and require reversal. *Id.*; *see also Jackson v. Madison County Dept. of Family and Children*, 690 N.E.2d 792, 793 (Ind.Ct.App.1998), *trans. denied* (holding that in a termination of parental rights proceeding, a Welfare Department is not required to plead and prove that it offered services).

Elkins attempts to distinguish *Stone* by arguing that the OFC was required to provide family reunification services in her case because of the later enactment of Indiana Code sections 31–34–21–5.5 and 31–35–2–4.5. Pursuant to Indiana Code section 31–34–21–5.5, the county office of family and children must make reasonable efforts to preserve and reunify families. Pursuant to Indiana Code section 31–35–2–4.5(d)(2), a party may move to dismiss a termination petition on grounds that the county office of family and children has not provided family services in accordance with a currently effective case plan *if* Indiana Code Section 31–34–21–5.6 is not applicable to the child. Indiana Code Section 31–34–21–5.6 enumerates exceptions

to the requirement to make reasonable efforts to preserve and reunify families. Pursuant to Indiana Code section 31–34–21–5.6(b)(4), reasonable efforts to reunify or preserve a child's family are not required if the court finds that the parental rights of a parent with respect to a biological or adoptive sibling of a child who is a child in need of services have been involuntary terminated. Here, it is undisputed that Elkins's parental rights were involuntarily terminated with respect to E.E.'s two older siblings. The OFC provided elective rather than mandatory services to Elkins, and she cannot distinguish *Stone* on this basis.

 Further, notwithstanding the enactment of Indiana Code section 31–35–2–4.5, the provision of family services is not a requisite element of our parental rights termination statute. A failure to provide services, or the provision of services in an allegedly discriminatory manner, does not serve as a basis on which to directly attack a termination order as contrary to law.

### Conclusion

The OFC established by clear and convincing evidence the requisite elements to support the termination of Elkins's parental rights with regard to E.E. Elkins may not directly attack the termination order on the grounds that she was denied appropriate family services because of her mental disability.

Affirmed.

RILEY, J., and BARNES, J., concur.