**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Sep 03 2013, 5:31 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**CAROLYN J. NICHOLS**
Noblesville, Indiana
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**ROBERT J. HENKE**
DCS Central Administration
Indianapolis, Indiana

**MICHAEL C. PRICE**
DCS, Hamilton County Office
Noblesville, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

IN THE MATTER OF THE TERMINATION )
OF THE PARENT-CHILD RELATIONSHIP )
OF E.M., L.M. & G.M., )
 )
   and )
 )
S.M. (Mother), )
 )
   Appellant-Respondent, )
 )
     vs. )   No.  29A02-1301-JT-89
 )
THE INDIANA DEPARTMENT OF )
CHILD SERVICES )
 )
   Appellee-Petioner. )

APPEAL FROM THE HAMILTON CIRCUIT COURT
The Honorable Paul A. Felix, Judge
The Honorable Todd L. Ruetz, Master Commissioner
Cause No. 29C01-1112-JT-1794
29C01-1112-JT-1795
29C01-1112-JT-1796

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**ROBB, Chief Judge**

Case Summary and Issues

S.M. ("Mother") appeals the trial court's termination of her parental rights to her three children. Mother raises two issues for our review: 1) whether the trial court's conclusions that she poses a threat to the well-being of her children and the circumstances that led to the removal of the children will not be remedied is supported by sufficient evidence; and 2) whether the permanency plan for the children is adequate and in their best interests. Concluding there was sufficient evidence supporting the termination of Mother's parental rights, we affirm.

Facts and Procedural History

Mother and B.M. ("Father")[1] are the parents of two daughters, E.M. and L.M., and one son, G.M. In 2010, the family lived in a house provided by Father's parents, who paid the mortgage and all utility bills for the family. On February 4, 2010, Mother was out of town for her job and the Hamilton County Department of Child Services ("DCS") called upon the family to investigate a report of a messy house. DCS removed the three children

---

[1] Father has appealed the termination of his parental rights separately.

from the home because conditions were "unsafe, unsanitary, and unsatisfactory for the health and well-being of the child[ren]. The home contained garbage, stacked dirty dishes, uneaten and decaying food, piles of clothing, sharp utensils within reach of the child[ren], and was in a state of disarray." Exhibit 1 at 1.[2] The children were adjudicated Children in Need of Services ("CHINS"), but they were ultimately returned to the parents on August 4, 2010, for a trial home visit because the parents had participated in services and were maintaining appropriate home conditions.

By October 2010, however, DCS was unhappy with Father's participation in home-based case management services, the parents' marriage was in turmoil, and Father's parents had rescinded their provision of housing to the family. The children were once again removed from the parents' care until Mother could secure her own housing. From this point on, the parents did not reside together. Mother found an apartment and the children were returned to her for a trial home visit in November 2010. Father visited with the children at Mother's apartment. During this trial home visit, Mother confided in her home-based therapist that she was experiencing a recurring hallucination, and participated in a mental health evaluation at her therapist's suggestion. Based upon results of the evaluation, Mother began taking medication and attending therapy. At a review hearing in June of 2011, the trial court noted that the parents were in compliance but "must demonstrate continued ability to provide appropriate care and supervision over the children as support services are reduced, in

---

[2] Father was ultimately convicted of three counts of Class D felony neglect of a dependent due to this incident and sentenced to two years suspended to probation.

order to maintain physical custody of the children in their home." Appellant's Appendix at 132-33.

Mother missed several therapy appointments during the summer of 2011. In August of 2011, DCS visited Mother's home and again removed the children because the children complained of being hungry and there was not sufficient food in the home. The parents' access to food stamps had lapsed and they had insufficient money to buy groceries. During this removal, Mother only sporadically attended mental health treatment and both parents were inconsistent in visiting with the children. Following a review hearing begun in October and concluded in December of 2011, the permanency plan for the children was changed from reunification to termination, and DCS subsequently filed petitions to terminate Mother's and Father's parental rights to the children.

Several months into the termination proceedings, visitation between the parents and children was suspended. A request to place the children with a cousin of Mother's was denied as coming too late in the proceedings. At the time of the fact-finding hearing on the termination petitions, Mother had been living in an Indianapolis apartment, but an eviction proceeding was pending against her and she was residing with her father; Father had been living with his boss but was most recently living in a shelter. The children were with a foster family who had fostered them during the first removal in 2010 and had been fostering them since their final removal in August 2011. The foster parents intended to adopt the children. The family's DCS case manager and the children's guardian ad litem ("GAL") both testified

4

that termination of parental rights and adoption by the foster parents was in the children's best interests.

The juvenile court issued extensive findings of fact detailing the family's history with DCS and the relevant witness testimony from the termination hearing, specifically noting the parents' repeated shortcomings in providing food and shelter for the children, their frequent failure to appear at court hearings, Father's lack of participation in ordered services and Mother's inconsistency in participating in services, and Mother's mental health issues, and ultimately concluding:

> 32.) By a clear and convincing standard, there is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the biological parents will not be remedied. All preceding paragraphs, individually and collectively, are explicitly adopted as facts in support of this finding and are summarized as follows:
> - The biological parents began their involvement with DCS by failing to provide necessary food and supervision for the [children], including that the children were physically hungry and the home conditions were in deplorable conditions when discovered by authorities.
> - The biological parents were afforded extensive and sincere efforts by DCS, the GAL, and engaged service providers to attempt to alleviate and remedy these conditions and eliminate any parenting deficits.
> - Despite these months, developing into multiple years' worth of effort, the biological parents have not attained the ability or capacity to provide a safe and stable home or basic necessities, including food.
> - This is demonstrated by a record of attempted trial home visits that resulted in failure when either the biological parents could no longer maintain housing, or could no longer keep their children fed, or both. The final effort at a trial home visit ended unsuccessfully on 8/19/11, when the children were informing a service provider that they were again hungry and the parents were not alleviating their hunger. This event occurred within less than three months from the planned reduction in support props holding the biological parents up. Upon those props being reduced, the biological parents proved unable to maintain safe and appropriate shelter, food, and supervision. They are

5

unable to fulfill their parental roles and obligations without being held up by government and social service props, which cannot be indefinite.

- The biological parents failed to successfully participate in or complete reunification efforts, failed to obtain or maintain housing or source of support or income sufficient for the safe and appropriate upbringing of the [children], and failed to participate in visitation as offered and provided for during the CHINS proceedings.

- As of the close of the termination proceedings, the biological mother had been evicted and was relying upon the charity of her own father to provide shelter for herself within days of the final hearing. The biological father resides with his boss. Neither can provide shelter for the [children], nor would they be able to provide for the basic necessities, including food, for the [children] if they were given care and control of the children at that time.

33.) By a clear and convincing standard, there is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the [children]. This is demonstrated by each of the previous individual paragraphs, taken collectively as well, which are specifically adopted and found by this Court.

34.) It is in the [children's] best interests for the parent-child relationship to be terminated. The previous recitation of facts are [sic] found to demonstrate this finding and are now explicitly adopted for this purpose.

35.) The Court also explicitly adopts the offered opinions of the DCS case manager, the GAL, and the pre-adoptive foster parent as to the [children's] best interests, as fact. The pre-adoptive family has remedied negative conditions that the children had when placed in their home, do not have any history resembling that exampled by the biological parents, and are parents of the [children] in all but legal status as this point. The children thrive in their care and should be given the opportunity to complete their legal status as the legal children of this family.

36.) There is a satisfactory plan for the care and treatment of the [children], that being adoption. This fact is found by clear and convincing evidence, and supported by each of the prior paragraphs of this order.

Appellant's App. at 39-41 (as to G.M.); 55-57 (as to L.M.); and 71-73 (as to E.M.). The trial court accordingly ordered the parents' rights to the children be terminated. Mother now appeals.

## Discussion and Decision

6

## I. Standard of Review

In determining whether the evidence is sufficient to support a judgment terminating parental rights, we neither reweigh the evidence nor judge the credibility of the witnesses. In re D.J., 755 N.E.2d 679, 683 (Ind. Ct. App. 2001), trans. denied. We consider only the evidence favorable to the judgment and the reasonable inferences to be drawn therefrom. Id. When reviewing the findings of fact and conclusions of law upon which a termination of parental rights is premised, we engage in a two-tiered standard of review: we first determine whether the evidence supports the findings, and second, whether the findings support the judgment. Id. We will reverse only upon a showing of clear error. Id. A finding is clearly erroneous when there are no facts or inferences drawn therefrom that support it. In re A.J., 877 N.E.2d 805, 815 (Ind. Ct. App. 2007), trans. denied. A judgment is clearly erroneous only if the findings of fact do not support the trial court's conclusions thereon, or the conclusions thereon do not support the judgment. Id.

In evaluating the circumstances surrounding the termination, the court must subordinate the interests of the parents to those of the child. R.G. v. Marion Cnty. Office, Dep't of Family & Children, 647 N.E.2d 326, 328 (Ind. Ct. App. 1995), trans. denied. Termination of parental rights is proper where the child's emotional and physical development is threatened. Id. The trial court need not wait until the child is irreversibly harmed such that his physical, mental, and social development is permanently impaired before terminating the parent-child relationship. Id.

To determine whether a reasonable probability exists that the conditions justifying a child's continued placement outside the home will not be remedied, the trial court must judge a parent's fitness to care for her children at the time of the termination hearing and take into consideration evidence of changed conditions. In re D.D., 804 N.E.2d 258, 266 (Ind. Ct. App. 2004), trans. denied. However, the trial court must also evaluate the parent's habitual patterns of conduct to determine the probability of future neglect or deprivation of the child. Id.

## II. Sufficiency of the Evidence

In order for Mother's parental rights to be terminated, DCS needed to prove by clear and convincing evidence:

(A) that one (1) of the following is true:
   (i) The child has been removed from the parent for at least six (6) months under a dispositional decree.
   (ii) A court has entered a finding under IC 31-34-21-5.6 that reasonable efforts for family preservation or reunification are not required, including a description of the court's finding, the date of the finding, and the manner in which the finding was made.
   (iii) The child has been removed from the parent and has been under the supervision of a local office or probation department for at least fifteen (15) months of the most recent twenty-two (22) months, beginning with the date the child is removed from the home as a result of the child being alleged to be a child in need of services or a delinquent child;
(B) that one (1) of the following is true:
   (i) There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.
   (ii) There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.
   (iii) The child has, on two (2) separate occasions, been adjudicated a child in need of services;
(C) that termination is in the best interests of the child; and
(D) that there is a satisfactory plan for the care and treatment of the child.

8

Ind. Code § 31-35-2-4(b)(2).

Mother contends the evidence is insufficient to support the trial court's findings that the conditions that led to the children's removal would not be remedied and/or that the continuation of the parent-child relationship poses a threat to the children's well-being. She further contends the evidence is insufficient to support the trial court's finding that adoption by the children's foster family is a satisfactory plan for the care and treatment of the children and that termination is in their best interests.

A.  Conditions that Led to Removal/Threat to Well-Being

As noted above, the trial court's termination order included extensive findings of fact.[3] Some of the relevant findings which our review determines are supported by the record include:  the children were removed because the family home was in unacceptable disarray, the youngest child did not appear to be developmentally appropriate for his age, and the children indicated they were hungry; Father was convicted of three counts of neglect of a dependent as a result of the conditions; an initial trial home visit was terminated after just two months despite intensive family preservation efforts because the family did not have adequate housing and Father refused to participate in providing care and supervision for the children; despite Mother's acknowledgement of hallucinatory experiences, and Father's only occasional compliance with the case plan and participation in family life, a second trial home

---

[3]  Indiana Code section 31-35-2-4(b)(2)(B) is written in the disjunctive and therefore the trial court need only have found that <u>either</u> the conditions that led to the children's removal would not be remedied <u>or</u> that the continuation of the parent-child relationship poses a threat to the children's well-being.  In re A.P., 981 N.E.2d 75, 81n.1 (Ind. Ct. App. 2012).  The trial court found both, but cited the same evidence in support of

visit with Mother was continued through several review hearings with the proviso that the parents had to demonstrate the ability to appropriately parent the children as provider assistance was decreased; the second trial home visit was ultimately terminated when the parents were not able to demonstrate they could provide for the children independent of service provider intervention, specifically, they were not able to provide adequate supervision, food, or housing; the children had been removed three times in approximately eighteen months; the parents demonstrated a history of being unable to maintain stable employment or provide stable housing during that time; Mother was inconsistent in treating her mental health needs; the parents were inconsistent and delinquent in participating in visitation with the children and ultimately visitation was halted; the children's emotional well-being improved after the visitations were halted; the parents failed to appear or appeared late at several hearings in these proceedings, including failing to appear at a hearing held to determine whether their visitation with the children should be suspended and appearing ninety minutes late for the termination hearing; and at the time of the termination hearing, both parents' housing situations were in flux.

Mother's argument focuses on the successes she had during the CHINS proceedings. We agree that this is not necessarily a case of a parent being unwilling or failing to cooperate in a CHINS proceeding. See Appellant's Brief at 22 (citing In re E.E., 736 N.E.2d 791 (Ind. Ct. App. 2000) (noting that mother had historically been unable or unwilling to fully cooperate in the CHINS proceedings)). She did participate in a number of services, and the trial court found her in compliance with the case plan at several review hearings. However,

both findings.

10

the mere fact that she was willing to and participated in the offered services does not mean that she – and ultimately the children – benefitted from them. Twice after the children were returned to Mother's care, they were again removed because any progress she had made was not sustainable without the intervention of service providers. "Where there are only temporary improvements and the pattern of conduct shows no overall progress, the court might reasonably find that under the circumstances, the problematic situation will not improve." In re A.H., 832 N.E.2d 563, 570 (Ind. Ct. App. 2005). While we do not doubt that Mother loves the children, she has shown a pattern of inability to provide adequate housing, food, and supervision for them, and at the time of the termination hearing, she was again in a position of being unable to provide those essentials, as she had been evicted from her apartment and was living temporarily with a relative. Any progress Mother is able to make when she is responsible only for herself has not been sustainable when she is also responsible for the full-time parenting of her children, and this has been demonstrated repeatedly as the children have been shuttled between parental and foster care. The evidence is sufficient to support the trial court's findings that the conditions that resulted in the children's removal will not be remedied and/or that the continuation of the parent-child relationship is a threat to the children's well-being.

## B. Best Interests of the Children/Plan for their Care

Mother also contends that it is in the best interests of the children to stay in her care, or, in the alternative, that the plan for their adoption by their foster family is not a satisfactory plan for their care. As we have already determined that the trial court's findings regarding

11

returning the children to Mother's care are not clearly erroneous, we likewise hold the trial court's finding that it is in the best interests of the children for Mother's parental rights to be terminated is not clearly erroneous. As for the plan for their care, Mother asserts if they are not returned to her, they should be placed with a relative. Specifically, in July of 2012, nearly two and one-half years after the CHINS proceedings were initiated and nearly eight months after the termination petitions were filed, Mother requested the children be placed with her cousin rather than the foster family. Mother continues to advocate their placement with this relative in the event the termination of her rights is affirmed.

The trial court held a hearing on Mother's request and heard testimony from Mother and from the cousin, among other witnesses, and ultimately denied the request to change the children's placement. Before considering any other out-of-home placement when a child is removed from the parental home as a CHINS, DCS is required to consider placing a child with a "suitable and willing blood or an adoptive relative caretaker, including a grandparent, an aunt, an uncle, or an adult sibling . . . ." Ind. Code § 31-34-4-2(a)(1). At the time a permanency plan is adopted, the intended long-term arrangements for the care and custody of the child are to be set forth, which can include initiation of termination proceedings, placement of the child for adoption, and placement of the child with a responsible person including a relative. Ind. Code § 31-34-21-7.5(c)(1). There was no allegation in the CHINS proceeding that DCS failed to consider relative placement, and the permanency plan issued in December 2011 clearly indicated termination and adoption were the intended arrangements

12

for the children. The CHINS proceedings would have been the appropriate venue for raising the issue of relative placement.

We cannot say the trial court's denial of Mother's request – made several months into the termination proceedings – to place the children with a distant relative and its corresponding finding in the termination order that adoption by the foster family was a satisfactory plan for their care and treatment was clearly erroneous. The children have endured several disruptions in placement in their young lives, have been with their current foster family continuously for over a year, are bonded to the foster parents and siblings, and the foster family is bonded to these children, as evidenced by their desire to adopt the children. The evidence supports the trial court's findings that termination of Mother's parental rights was in the children's best interests and that adoption by the foster family was a satisfactory plan for the children's care.

## Conclusion

Based on our review of the record and of the trial court's extensive and detailed findings, we conclude the evidence is sufficient to support the trial court's order terminating Mother's parental rights to the children.

Affirmed.

RILEY, J., and KIRSCH, J., concur.