**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**

ATTORNEY FOR APPELLANT
MOTHER:

**LISA A. MOODY**
Princeton, Indiana


ATTORNEY FOR APPELLANT
FATHER:

**JASON SPINDLER**
Spindler Law
Princeton, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**ROBERT J. HENKE**
**CHRISTINE REDELMAN**
Deputies Attorney General
Indianapolis, Indiana

FILED

Mar 06 2014, 9:17 am

CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

IN THE MATTER OF THE TERMINATION )
OF THE PARENT-CHILD RELATIONSHIP )
OF:  M.M., G.M., AND D.M., )
 )
    And )
 )
K.M. (Mother) and R.M. (Father), )
 )
    Appellants-Respondents, )
 )
        vs. )    No.  26A01-1308-JT-345
 )
THE INDIANA DEPARTMENT OF CHILD )
SERVICES, )
 )
    Appellee-Petitioner. )

APPEAL FROM THE GIBSON CIRCUIT COURT
The Honorable Jeffrey F. Meade, Judge
Cause Nos. 26C01-1209-JT-8
26C01-1209-JT-9
26C01-1209-JT-10

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**ROBB, Judge**

## Case Summary and Issue

R.M. ("Father") and K.M. ("Mother") appeal from the juvenile court's order terminating parental rights over M.M., G.M. and D.M. (the "children"), raising the following issue for our review: whether the order terminating parental rights is supported by clear and convincing evidence. Concluding there is sufficient evidence to support the juvenile court's decision to terminate Mother and Father's parental rights over the children, we affirm.

## Facts and Procedural History[1]

Mother and Father (collectively "Parents") are the biological parents of M.M. (born May 11, 2006), G.M. (born October 16, 2008), and D.M. (born October 27, 2009).[2] The

---

[1] We note that Father's brief fails to provide a single citation to the record. We remind Father's attorney that factual statements must be supported by citations to the record on appeal. See Ind. Appellate Rule 22(C) and 46(A)(6). Although always required, citation to the record is especially important where, as in this case, the appeal is accompanied by a voluminous record.

[2] Mother and Father have two additional children who were not subject to this termination proceeding.

Parents were previously married but divorced prior to the juvenile court's order terminating their parental rights over the children.

The Department of Child Services ("DCS") initially became involved with M.M. and G.M. and petitioned for M.M. and G.M. to be adjudicated children in need of services ("CHINS") in April 2009 due to an unsafe and unsanitary home environment. Those CHINS proceedings were dismissed in May 2009, but DCS once again petitioned for M.M. and G.M. to be adjudicated CHINS on June 8, 2009. The June petition was the result of DCS concerns with the Parents' substance abuse and unsafe and unsanitary living conditions. M.M. and G.M. were removed from the home and placed into foster care. Upon the Parents' participation with service providers, the CHINS proceedings were eventually dismissed on October 30, 2009.

DCS became involved with all three children in early 2010 in response to allegations of the Parents' drug abuse. The children's home was littered with trash, and roaches were found roaming throughout the house. The furniture and floors were stained with animal feces. The home did not have central heating, and the family relied on a space heater located in a single bedroom. The Parents submitted to drug screens: Mother tested positive for marijuana, and Father tested positive for marijuana and methamphetamine. DCS removed the children from the home on January 11, 2010. A guardian ad litem was appointed, and the children were adjudicated CHINS on February 11, 2010.

On March 8, 2010, the juvenile court issued a dispositional order and ordered continued placement of the children outside the home and care of the Parents. The dispositional order contained a number of requirements for the Parents with the ultimate

goal of reunification. Those requirements included that Parents must, among other things: (1) maintain a safe, clean, and healthy home environment; (2) cooperate with a parent aid and case managers to maintain stable housing and employment, develop parenting skills, and improve in any area deemed necessary by their case manager; (3) participate and cooperate in family therapy; (4) stay free from illegal substances; and (5) submit to random drug screens, the refusal to which would be considered a positive test result.

The Parents consistently participated in and took advantage of parental visitation. However, their participation and cooperation with all other DCS services was sporadic and largely nonexistent during the pendency of the CHINS proceedings. On August 26, 2010, Father's parenting time was suspended due to noncompliance with court-ordered services.

A permanency hearing was held on January 13, 2011, at which it was determined Mother had still failed to maintain appropriate housing. Father, however, showed signs of improvement and received increased parenting time with the children.

On May 5, 2011, the juvenile court authorized a trial home visit for the children with Father. However, this trial home visit was short-lived. On June 9, 2011, police discovered drug paraphernalia, marijuana, and methamphetamine in Father's home. Some of those substances were found within reach of the children. Father tested positive for methamphetamine and cocaine. DCS also found the house to be unclean and unsanitary, with trash and soiled diapers strewn throughout the house. The children were removed from Father's home, and the trial home visit was canceled.

In the spring and summer of 2011, Mother struggled with employment and failed to submit to random drug screens. In September 2011, Mother and Father had a physical

4

altercation resulting in injuries to both parties; the altercation took place in front of the Parents' youngest child, who is not part of this appeal. But in October 2011, Mother showed signs of improvement, and a trial home visit began on November 8, 2011. After a couple months, DCS became concerned that Mother was regressing in areas where she had improved; M.M. was having issues with tardiness and absence from school; and the conditions of Mother's home began to steadily worsen. DCS worked with Mother to establish goals and improve her home conditions, but Mother was unable to comply with services and goals set by DCS, resulting in removal of the children and termination of the trial home visit on February 7, 2012.

On May 15, 2012, a review hearing was held, and the juvenile court determined that the Parents had not complied with the dispositional order. At that time, the permanency plan was changed to reflect a concurrent plan for reunification and adoption.

On September 6, 2012, DCS filed a petition for termination of parental rights. The petition alleged in pertinent part (1) there is a reasonable probability that the conditions that resulted in the children's removal or the reasons for placement outside the home of the Parents will not be remedied; (2) there is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the children; and (3) termination is in the best interests of the children.

In the months between the cessation of Mother's trial home visit and DCS's petition for termination of parental rights, the Parents were noncompliant with services, and they both continued to test positive or otherwise fail to submit to drug screens. Both Parents failed to communicate with DCS regarding housing and employment. They also failed to

5

consistently attend scheduled appointments with service providers. Mother tested positive for methamphetamine in March 2012, and Mother continued to test positive for marijuana as late as September and October 2012, despite her knowledge of upcoming termination proceedings. Father also continued to exhibit problems in the months prior to and during the termination proceedings. Father tested positive for methamphetamine in October 2012. He violated probation and was incarcerated on January 2, 2013. Father admitted he had not attended a Narcotics Anonymous meeting in nearly a year prior to the termination hearings, and he had attempted suicide five times during the CHINS case.

The juvenile court held an evidentiary hearing on the termination over the course of six days beginning October 24, 2012 and ending January 29, 2013. At the time of the termination hearings, Father was incarcerated and Mother was unemployed and without housing. Mother stated that if the children were returned to her care, they would have to live with their maternal grandmother in Illinois. Mother gave birth to another child during the termination hearings, and she admitted to using marijuana while pregnant with that child.

On July 3, 2013, the juvenile court issued its findings of fact and conclusions of law. The court concluded the allegations in the petition for termination of parental rights were proved by clear and convincing evidence and terminated the Parents' parental rights to the children. Specifically, the juvenile court found that over the two and one-half years of CHINS proceedings, the Parents failed to remedy their issues regarding substance abuse, poor home conditions, and employment. The court also concluded the Parents did not comply with the dispositional order, submit to drug screens, or participate in or benefit

from a number of services offered. The court noted that neither Mother nor Father made a meaningful attempt to address the problems causing the CHINS case and attain reunification. This appeal followed.

## Discussion and Decision

### I. Standard of Review

A decision to terminate parental rights is reviewed with great deference. In re J.C., 994 N.E.2d 278, 283 (Ind. Ct. App. 2013). We will neither reweigh evidence nor judge the credibility of witnesses, and we consider only the evidence and reasonable inferences favorable to the judgment. Id.

Here, the juvenile court issued special findings of fact and conclusions of law pursuant to Indiana Trial Rule 52(A). In this case, we apply a two-tiered standard of review: (1) we determine whether the evidence supports the findings of fact and (2) whether the findings support the judgment. In re Adoption of A.S., 912 N.E.2d 840, 851 (Ind. Ct. App. 2009), trans. denied. The trial court's findings or judgment will be set aside only if they are clearly erroneous. Id. A finding of fact is clearly erroneous if the record lacks evidence or reasonable inferences from the evidence to support it. Id.

### II. Termination of Parental Rights

Indiana Code section 31-35-2-4 sets out what must be proven in order to terminate parental rights. Relevant to this case, the statute's requirements include:

> (B) that one (1) of the following is true:
> (i) There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.

7

(ii) There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.

\*\*\*

(C) that termination is in the best interests of the child . . . .

Ind. Code § 31-35-2-4(b)(2)(B)-(C). The State must prove each element by clear and convincing evidence. In re G.Y., 904 N.E.2d 1257, 1261 (Ind. 2009). If a juvenile court determines that the allegations required by Indiana Code section 31-35-2-4 are true, then the court will terminate the parent-child relationship. Ind. Code § 31-35-2-8.

Mother and Father have filed separate briefs, challenging the juvenile court's decision to terminate their respective parental rights to the children. They contend there was not sufficient evidence to prove: (1) there is a reasonable probability that the conditions that resulted in the children's removal or the reasons for placement outside the home of the Parents will not be remedied; (2) there is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the children; and (3) termination is in the best interests of the children.

A. Termination of Mother's Parental Rights

First, Mother argues there is not sufficient evidence to show a reasonable probability that the conditions that resulted in the children's removal or the reasons for placement outside her home will not be remedied. Mother claims that she is no longer abusing illegal substances, and she is attending monthly counseling sessions to cope with depression. She notes that the children's maternal grandmother and aunt are willing to help Mother get back on her feet and are willing to offer a place for Mother and the children to live. Finally,

8

Mother states that she is actively seeking employment. In essence, Mother argues the juvenile court did not lend sufficient weight to her most recent improvements.

Mother rightly states that a juvenile court must judge a parent's fitness to care for her children at the time of the termination hearing, taking into account evidence of changed conditions. See In re J.T., 742 N.E.2d 509, 512 (Ind. Ct. App. 2001), trans. denied. This does not mean, however, that the juvenile court must wholesale ignore a parent's past actions; the court "must also examine the parent's pattern of conduct." In re E.E., 736 N.E.2d 791, 795 (Ind. Ct. App. 2000). The evidence in this case shows a pattern of conduct by Mother that indicates the conditions triggering the CHINS proceedings are not likely to be remedied. This CHINS case was ongoing for approximately two and one-half years before termination hearings began. During that length of time, Mother continued to abuse drugs, failed to cooperate with DCS services, and was unable to furnish adequate housing for the children. And although Mother claims to have been sober as of the termination, the evidence reflects that she was abusing drugs as late as October 2012 when the termination hearings began. The juvenile court's conclusion that there was a reasonable probability that the conditions that resulted in the children's removal will not be remedied was not clearly erroneous.

Mother also contends the juvenile court erred by finding that continuation of her parent-child relationship posed a threat to the children's well-being. However, Indiana Code section 31-35-2-4(b)(2)(B) is written in the disjunctive and requires only that one of the elements be true to terminate parental rights. Because we conclude the evidence is sufficient to show a reasonable probability that conditions that resulted in the children's

9

removal will not be remedied, we need not determine whether the juvenile court erred in concluding continuation of the parent-child relationship posed a threat to the children's well-being.  See In re J.W., 779 N.E.2d 954, 962 (Ind. Ct. App. 2002), trans. denied.

Last, Mother argues that termination of her parental rights is not in the best interests of the children.  Pointing out that it is unlikely DCS will find a single adoptive home for all three children, Mother contends termination and adoption are not in the children's best interests.  We agree it would be preferable for all of the children to remain together.  However, Mother cites no authority indicating that the unlikelihood of such a situation forbids termination of parental rights despite the parent's unfitness.

"Permanency is a central consideration in determining the best interests of a child." In re G.Y., 904 N.E.2d at 1265.  These CHINS proceedings were ongoing for approximately two and one-half years before termination proceedings began.  The juvenile court found the Parents are unlikely to remedy the issues leading to removal from the home, and "[a]n approved adoptive family offers these children permanency which they greatly need."  Appellant's Appendix at 24.  Moreover, the children's guardian ad litem recommended termination of parental rights, believing it to be in the best interests of the children.  See In re A.B., 887 N.E.2d 158, 170 (Ind. Ct. App. 2008) (stating a guardian ad litem's recommendation for termination supported juvenile court's finding that termination was in the child's best interests).  Based on the totality of the circumstances, the juvenile court's determination that termination is in the children's best interests is not clearly erroneous.

## B. Termination of Father's Parental Rights

Father also challenges the juvenile court's decision to terminate his parental rights in the children. However, Father fails to present any argument regarding the juvenile court's determinations that there is a reasonable probability that the conditions that resulted in the children's removal will not be remedied and that the continuation of the parent-child relationship poses a threat to the well-being of the children. Father's only mention of either element occurs in generic Statement of the Issues and Summary of the Argument sections, and Father provides no analysis of either element. Because Father has failed to provide a cogent argument or citation to adequate authority, he has not preserved those arguments for appeal. See Zivot v. London, 981 N.E.2d 129, 137-38 (Ind. Ct. App. 2012); see also Ind. Appellate Rule 46(A)(8)(a).

Father does, however, present a cogent argument challenging the juvenile court's determination that termination is in the best interests of the children. That said, Father's argument on that issue is identical to Mothers, stating DCS is unlikely to find a single adoptive home and that the children will not benefit from that result. For the reasons stated above, we conclude the trial court's judgment as to the children's best interests is not clearly erroneous.

## Conclusion

Concluding the juvenile court's decision to terminate the parental rights of Mother and Father was not clearly erroneous, we affirm.

Affirmed.

BARNES, J., and BROWN, J., concur.

11