**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Nov 12 2014, 9:27 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT,
C.L. (Mother):

**PHILIP R. SKODINSKI**
South Bend, Indiana

ATTORNEY FOR APPELLANT,
A.L. (Father):

**MARK J. TORMA**
South Bend, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**ROBERT J. HENKE**
**DAVID E. COREY**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| IN THE MATTER OF THE TERMINATION OF THE PARENT-CHILD RELATIONSHIP OF: | ) ) ) | |
| | ) | |
| A.L., A.F.L., C.L., & D.L. (Minor Children), | ) | |
| | ) | |
| And | ) | |
| | ) | |
| C.L. (Mother) & A.L. (Father) | ) | |
| | ) | |
| Appellants-Respondents, | ) | |
| | ) | |
| vs. | ) | No. 71A03-1403-JT-79 |
| | ) | |
| THE INDIANA DEPARTMENT OF CHILD SERVICES, | ) ) | |
| | ) | |
| Appellee-Petitioner. | ) | |

APPEAL FROM THE ST. JOSEPH PROBATE COURT
The Honorable James N. Fox, Judge
Cause No. 71J01-1304-JT-31
Cause No. 71J01-1304-JT-32
Cause No. 71J01-1304-JT-33
Cause No. 71J01-1304-JT-34

**November 12, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**ROBB, Judge**

Case Summary and Issues

C.A.L. ("Mother") and A.F.L., Jr. ("Father") separately appeal the probate court's order terminating their parental rights over their four children. Mother raises one issue for our review: whether the Indiana Department of Child Services ("DCS") proved by clear and convincing evidence that termination was in the best interests of the children. Father raises two issues for our review, which we restate as: 1) whether the probate court erred as a matter of law when it terminated his parental rights without first reviewing certain evidence, and 2) whether the probate court had sufficient evidence to terminate his parental rights. Concluding that the probate court did not err in terminating the parental rights of Mother or Father, we affirm.

Facts and Procedural History

Mother and Father (collectively "Parents") are the biological parents of D.L., A.L., A.L. III, and C.L. (collectively "Children"). Parents were married but separated at the time of the termination hearing.

DCS received a report that Children were living in a dirty home on March 7, 2012. DCS obtained a court order to visit the home and began an investigation. After visiting the home and while completing its investigation, DCS received a second report that methamphetamine was being manufactured in the home. Accompanied by law enforcement, DCS family case managers again visited the home on March 21, 2012. While there, the case managers observed paraphernalia used for manufacturing methamphetamine in the garage, yard, and garbage. Parents admitted to using methamphetamine and marijuana. The case managers concluded that the home conditions had worsened since the first visit and also noted that Children were dirty and had scratches on their feet. DCS removed Children from the home that same day.

Based on the observations made on March 21, 2012, DCS filed petitions alleging Children were children in need of services ("CHINS") on March 22, 2012. The court adjudicated Children as CHINS based on the Parents' admission to the foregoing allegations.[1] Children were placed in foster care. In a predispositional report, the family case manager recommended that the responsibility and care of Children be through wardship to DCS with a permanency plan for reunification. The court held a disposition

---

[1] At the CHINS hearing, Mother admitted to the material allegations in the CHINS petitions. Because Father was incarcerated at the time, he was not present for the hearing. However, the court confirmed in its July 9, 2012 amended initial hearing order that Father admitted that Children were CHINS.

3

hearing on April 23, 2012. Following the hearing, the court granted DCS wardship, continued Children in foster care, and ordered Parents to: 1) obtain and maintain a stable source of income; 2) abstain from the use of illegal drugs; 3) complete substance abuse and parenting assessments; 4) submit to drug screens; 5) attend all scheduled visitations; and 6) participate in home-based services. The court also issued an order on petition for parental participation, whereby it advised Parents that "failure to participate in a program of care, treatment, or rehabilitation may lead to the termination of the parent-child relationship." Exhibit A at 27-28. The court also ordered DCS to file a progress report every three months.

The case manager filed the first progress report on July 9, 2012. The report stated that Children were "generally healthy" but had "lice and scabies" upon entering foster care. Id. at 30. It reported that Parents consistently had positive drug screens, some of which were for cocaine. Nevertheless, Parents had participated in a substance abuse assessment and treatment, as well as home-based case management. Also, Parents had both visited Children on a regular basis. The case manager recommended that wardship with DCS continue and recommended that Parents continue the following services: 1) visitation with their children; 2) substance abuse treatment; 3) home-based services; and 4) parenting classes. Id. at 32. The court approved the recommendations.

The case manager filed a second progress report and a review hearing was held on October 22, 2012. He reported that Children were generally healthy and that the lice and scabies were no longer a problem. Children were undergoing therapy. Parents were continuing to work on their services but struggled to find steady incomes sufficient to

4

support Children upon reunification. Parents mostly had clean drug screens since the last report; however, Mother recently tested positive for cocaine. Parents continued to enhance their ability to fulfill parenting obligations by participating in substance abuse assessment and treatment, home-based case management, and a parenting assessment. Parents had made all of their visits to Children. The case manager recommended that wardship with DCS continue and again recommended Parents continue the following services: 1) home-based case management; 2) substance abuse treatment; 3) supervised visitation; 4) parenting assessment; and 5) random drug screens. Id. at 42. The court issued an order on six month periodic case review, approving the permanency plan for reunification. A twelve month permanency hearing was scheduled for March 18, 2013.

The case manager filed a third and final progress report before the permanency hearing. He reported that Children remained well; however, Parents had struggled with their services. Parents had failed to maintain a stable residence. And although visits had been consistent since January, Parents had missed many visits with Children prior to that. Parents had dropped out of substance abuse treatment and both had tested positive for cocaine since the October report. Father was in the process of restarting his substance abuse program and completing an assessment for the second time due to missing classes. Mother also had to restart her substance abuse program after missing several classes. Parents also completed formal parenting assessments on which they both scored poorly. The case manager recommended that it would be in the best interest of Children to continue their current placement with a plan for reunification, because the family appears to have a good bond and Parents deserve additional time to improve on their goals. The case

5

manager noted that Parents knew that if they did not improve significantly in the next couple months, termination petitions would be filed and adoption would become the permanency plan.

At the permanency hearing, the court did not approve DCS's permanency plan for reunification. The court took the plan under advisement, suspended Parents' visitation, and stopped Parents' home-based services. DCS filed petitions for involuntary termination of Parents' rights on April 5, 2013. A status hearing was held on April 22, 2013, during which the court approved termination of parental rights and adoption as the new permanency plan for Children. Children were appointed a Court Appointed Special Advocate ("CASA"). The CASA filed a report with the court on August 22, 2013, recommending that Parents' rights be terminated.

Because Father had been incarcerated for some time, he requested a progress report from DOC which the trial court granted. The court issued an order on December 19, 2013,[2] which found that: Father was taking many steps toward a return to productive life in society; Father was participating in the facility's therapeutic Community Program, anger management program, inside out dad's program, and other available educational programs; and Father had the right and desire to present evidence of his participation in these programs in opposition to the petition to terminate his parental rights. Accordingly, the court ordered Westville Correctional Facility to submit a progress report prior to the termination hearing on January 9, 2014 detailing Father's participation.

---

[2] In the court's order, which was submitted as a proposed order by Father, the trial court "finds" these things. However, it appears there was not an evidentiary hearing from which the court could find this, but rather because of these assertions by Father, a progress report which would support these assertions would be requested.

6

The court held a termination hearing January 9, 2014, but it had not yet received the progress report that it had ordered Westville Correctional Facility to submit. At Father's request, the court agreed to delay entering final judgment until it received the progress report and all parties had the chance to respond to it and make closing arguments in writing. The court took the matter under advisement and ultimately issued an order terminating the parent-child relationships on February 6, 2014. The court issued another order on February 19, 2014,[3] clarifying and confirming the order entered February 6, 2014. Mother and Father now appeal.

Discussion and Decision

I.   Standard of Review

"When reviewing the termination of parental rights, we do not reweigh the evidence or judge witness credibility." In re C.G., 954 N.E.2d 910, 923 (Ind. 2011). "[W]e consider only the evidence and reasonable inferences that are most favorable to the judgment." S.L. v. Indiana Dept. of Child Services, 997 N.E.2d 1114, 1123 (Ind. Ct. App. 2013). Here, the probate court entered findings of fact and conclusions of law in its order to terminate the parent-child relationships. When reviewing findings of fact and conclusions of law in a termination of parental rights case, we apply a two-tiered standard of review. In re C.G., 954 N.E.2d at 923. We must determine whether the evidence supports the findings and whether the findings support the judgment. Id. "We will set aside the court's judgment terminating a parent-child relationship only if it is clearly erroneous." S.L., 997 N.E.2d at

---

[3] The order states, "The Court finds it had given the parties an opportunity to file findings of fact based on a DOC report. The Court having received a copy of the report from DOC, the Court made a ruling as the time for filing had passed and the Order entered on February 6, 2014 shall remain this Court's ruling." Father's App. at 23.

1123.  "Clear error is that which leaves us with a definite and firm conviction that a mistake has been made."  Id.

## II.  Termination of Parental Rights

"[T]he involuntary termination of parental rights is an extreme measure that is designed to be used as a last resort when all other reasonable efforts have failed . . . ."  In re K.W., 12 N.E.3d 241, 249 (Ind. 2014) (quotation omitted).  To ensure parental rights are not terminated prematurely, Indiana Code section 31-35-2-4 requires the State to prove, among other things:

> (B) that one (1) of the following is true:
>     (i) There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.
>     (ii) There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.
>     (iii) The child has, on two (2) separate occasions, been adjudicated a child in need of services;
> (C) that termination is in the best interests of the child; and
> (D) that there is a satisfactory plan for the care and treatment of the child.

Ind. Code § 31-35-2-4(b)(2)(B)-(D). The State must prove each element by clear and convincing evidence.  Ind. Code § 31-37-14-2; In re G.Y., 904 N.E.2d 1257, 1261 (Ind. 2009).  It is sufficient to show that the parent's custody threatens the child's emotional and physical development.  In re G.Y., 904 N.E.2d at 1261.  However, if the State fails to prove any element in Indiana Code section 31-35-2-4, it is not entitled to a judgment terminating parental rights.  Id.

Mother and Father have filed separate briefs, challenging the probate court's decision to terminate their respective parental rights to Children.

8

A. Termination of Mother's Parental Rights

Mother argues that the State did not present clear and convincing evidence that termination of her parent-child relationship with Children is in their best interests. We note that Mother's brief cites only three cases; none of them are cited in support of her argument on appeal. See Ind. Appellate Rule 46(A)(8)(a). Nevertheless, we do not take the termination of parental rights lightly and address her argument below.

Mother claims that if she was given the same services as those services offered to the foster parent, then she and Children would have improved equally as well. However, Mother has offered no legal authority showing that DCS was first required to offer her those same services before terminating her parental rights. In contrast, our review of the law shows the opposite. See In re E.E., 736 N.E.2d 791, 796 (Ind. Ct. App. 2000) ("[T]he provision of family services is not a requisite element of our parental rights termination statute . . . .").

Additionally, Mother was offered services and was not successful in completing them. We have held that the probate court may consider a parent's response to services offered by DCS in determining the probability of future behavior. In re A.B., 887 N.E.2d 158, 170 (Ind. Ct. App. 2008). It is also true that a CASA's recommendation that parental rights should be terminated will support a finding that termination is in the children's best interests. See id.

In its order to terminate the parent-child relationships, the court found that Mother had failed to comply with the previous dispositional orders. Specifically, it found that Mother had failed to remain free from drugs and noted Mother appeared to be under the

influence of drugs at trial and had difficulty staying awake. Mother was also acting inappropriately prior to trial. The court found that the reason for removal of Children—Mother's drug use—was unlikely to be remedied and likely to pose a harm to Children if allowed to continue. Mother had participated in a substance abuse assessment and treatment but did not respond well to these services, as she was unable to consistently stay drug free. We also note that the CASA appointed to Children recommended that Parents' rights be terminated. Based on the totality of the evidence, the court's determination that termination of Mother's parental rights was in the best interests of Children is not clearly erroneous.

## B. Termination of Father's Parental Rights

Father argues that the probate court erred as a matter of law when it terminated his parental rights without first reviewing his progress report from Westville Correctional Facility and allowing the parties to comment as it stated it would. He then argues that, without the progress report, the court had insufficient evidence to terminate his parental rights.

Father cites no legal authority to support his claim that the trial court erred as a matter of law in issuing its termination order without reviewing the progress report or allowing the parties to file written closing arguments after seeing it.[4] In addition, many of the facts included in Father's brief regarding the progress report are not supported by

---

[4] Father claims the court terminated his parental rights without first reviewing the progress report. However, his belief is based on assumption rather than fact. The February 19, 2014 order clarifying and confirming the order entered February 6, 2014 states that the court "received a copy of the report from DOC." Father's App. at 23. Although it is unclear whether the court reviewed it, it is telling that Father has failed to identify anything in the progress report that would have changed the outcome.

citation to the record. See Ind. Appellate Rule 22(C) and 46(A)(6). Indeed, our review of the record shows that those facts have no support in the record. It is the appellant's burden to present a complete record with respect to the issues raised. Finke v. Northern Ind. Pub. Serv. Co., 862 N.E.2d 266, 272 (Ind. Ct. App. 2006), trans. denied. Because Father has failed to articulate the legal basis for his claim or to support it with record material, this argument has been forfeited. See Zivot v. London, 981 N.E.2d 129, 137-38 (Ind. Ct. App. 2012); Ind. Appellate Rule 46(A)(8)(a).

Father also claims that the probate court used outdated evidence when considering his non-compliance with the dispositional order as it relates to the elements of the termination statute; this amounts to an insufficiency of the evidence claim.

The probate court should consider evidence showing that conditions have changed and judge a parent's fitness to care for his children at the time of the termination hearing. In re J.T., 742 N.E.2d 509, 512 (Ind. Ct. App. 2001), trans. denied. This does not, however, mean that the court must ignore a parent's past actions, forgoing an examination of the parent's pattern of conduct. In re E.E., 736 N.E.2d at 795. The evidence in this case shows a pattern of conduct by Father that indicates his continued parental rights threaten the emotional and physical development of Children. See In re G.Y., 904 N.E.2d at 1261.

Children were removed from their home in March 2012 because, among other reasons, illegal substances were being used and manufactured on the premises. In its termination order, the court found that Father failed to comply with the April 23, 2012 dispositional order. Specifically, the record shows that Father struggled with his services, failed to maintain a stable residence, failed to maintain a steady source of income, dropped

11

out of substance abuse treatment, and tested positive for cocaine. He also missed several visitations with Children. Less than a year after having all four children removed and placed in foster care, Father began using illegal substances again. The court also found that Father was currently incarcerated and would remain incarcerated until August 2014. The fact that he has been free of substance abuse while incarcerated is not convincing evidence that he will not return to drugs once they are again readily available to him.

Father's pattern of conduct, especially during a time when his parental rights were in jeopardy, provided the probate court with sufficient evidence to make its findings regarding each element of the termination statute and those findings support the termination of Father's parental rights. The judgment was not clearly erroneous.

## Conclusion

Concluding that the termination of Mother's parental rights was in the best interests of Children and that the probate court had sufficient evidence to terminate Father's parental rights, we affirm.

Affirmed.

BAKER, J., and KIRSCH, J., concur.