

FILED

Sep 11 2018, 8:43 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT A.S.
(MOTHER)

Cara Schaefer Wieneke
Wieneke Law Office
Brooklyn, Indiana

ATTORNEYS FOR APPELLANT R.T.
(FATHER)

Steven E. Ripstra
Jacob P. Wahl
Ripstra Law Office
Jasper, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Robert J. Henke
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

In the Matter of the Termination
of the Parent-Child Relationship
of C.M.S.T., T.M., & M.M.
(Children) and A.S (Mother) and
R.T. (Father);

A.S. (Mother) and R.T. (Father),

*Appellants-Respondents,*

v.

The Indiana Department of
Child Services,

*Appellee-Petitioners*

September 11, 2018

Court of Appeals Case No.
18A-JT-530

Appeal from the Spencer Circuit
Court

The Honorable William E.
Weikert, Senior Judge

Trial Court Cause No.
74C01-1706-JT-135
74C01-1706-JT-136
74C01-1706-JT-137

**May, Judge.**

[1] A.S. ("Mother") appeals the involuntary termination of her parental rights to C.M.S.T., born May 11, 2011; T.M., born November 12, 2013; and M.M., born May 24, 2016 (collectively, "Children"). R.T. ("Father") appeals the involuntary termination of his parental rights to C.M.S.T.[1] Mother and Father (collectively, "Parents") present a number of issues, one of which we find dispositive: whether Parents were denied due process during the proceedings. The Department of Child Services ("DCS") concedes Parents were denied due process. Accordingly, we reverse and remand.

## Facts and Procedural History[2]

[2] In March 2015, DCS responded to a report that Mother and her then-husband were involved in a domestic violence-related altercation. C.M.S.T. was staying with Father at the time. T.M. was removed from Mother's care based on the domestic violence and Mother's use of methamphetamine. Father was required to bring C.M.S.T. to the DCS office for placement outside Mother's home as well. Father testified C.M.S.T. was not placed with him at that time because of his prior criminal history. T.M. and C.M.S.T. were placed with their

---

[1] The parental rights of the father of T.M. and M.M. were also terminated, but he does not participate in this appeal.

[2] We note some of the facts and timeline are difficult to discern because the record provided to us does not contain much information from the proceedings in the Child in Need of Services ("CHINS") cases. This lack of documentation has severely hindered our ability to review this matter.

grandmother, Te.C.,[3] though at some point they were removed from her care and placed in foster care.

[3] On March 21, 2015, DCS filed a petition alleging T.M. and C.M.S.T. were Children in Need of Services ("CHINS"). On April 16, 2015, T.M. and C.M.S.T. were adjudicated CHINS. In May 2015, C.M.S.T. was placed with Father on a trial basis. She was removed from Father's care shortly thereafter because Father had a medical emergency resulting from a mixture of alcohol and anti-anxiety medication. On June 8, 2015, the trial court entered its dispositional order in this case, ordering Mother and Father to engage in services.

[4] Jesse Hubert was the first Family Case Manager ("FCM") assigned to the case. At some point, he was replaced by FCM Marilyn Neal, who submitted a report[4] in the case on October 14, 2015. Father testified FCM Neal filed a false report that Father "went to [C.M.S.T.'s] school, made a scene, and tried to take [C.M.S.T.]." (Tr. Vol. III at 141.) Based on FCM Neal's false report, Father was required to participate in supervised visits with C.M.S.T. and was banned from the school. DCS terminated FCM Neal, who was replaced by FCM Sybil Rodeck. FCM Rodeck was on the case for only a short period of time before

---

[3] Te.C. is C.M.S.T.'s paternal grandmother, but DCS initially placed both C.M.S.T. and T.M. with her.

[4] This report is not in the record but was referenced at the termination hearing.

she was replaced with FCM Megan Ginanni, who was also working with Father on a CHINS case for one of his other children.

[5] At some point during her time working on the case, FCM Ginanni and Father began exchanging Facebook messages, which became sexually explicit in nature. FCM Ginanni and Father also engaged in a sexual relationship. Father testified FCM Ginanni would give him advanced notice of drug screens and told him he did not need to continue engaging in certain services. Father testified FCM Ginanni told him he "would get reunified [with C.M.S.T.] and she[5] would live with me and she was gonna (sic) help me get [Father's other child] as well." (*Id.* at 149) (footnote added).

[6] In January 2016, C.M.S.T. was placed with Father for a trial home visit. In March 2016, FCM Ginanni gave Father a drug screen he failed. Father testified FCM Ginanni told him "she'd take care of it." (*Id.* at 150.) Father submitted another drug test the next day and failed it, resulting in C.M.S.T.'s removal from his care. Father was arrested after his positive drug screen because drug use also violated the terms of his probation. Father testified he "got angry and decided to come clean about everything" with FCM Ginanni to FCM Ginanni's supervisor. DCS fired FCM Ginanni based on her inappropriate relationship with Father.

---

[5] It is unclear to whom the pronoun "she" refers, as C.M.S.T. is also female. In her brief, Mother identifies "she" as FCM Ginanni, though it is also possible "she" referred to C.M.S.T.

[7] During these transitions, Mother was compliant with services. Mother testified she stopped using methamphetamine on July 15, 2015. She learned she was pregnant with M.M. in October 2015. In March 2016, FCM Maureen Lambeck took over the case. Prior to M.M.'s birth in May 2016, Mother requested a trial home visit with C.M.S.T. and T.M. to prepare for the birth of their sibling. FCM Lambeck denied her request, though she allowed C.M.S.T. and T.M. to participate in overnight visits with Mother on the weekend. Then, in July or August 2016, FCM Lambeck placed C.M.S.T. and T.M. in Mother's care for a trial home visit.

[8] In early September 2016, Mother left Children with her father, her older son, and her older son's girlfriend, so that Mother could use methamphetamine at a different location. Mother testified she reported her use to FCM Lambeck shortly thereafter. FCM Lambeck removed Children from Mother's care and placed them in two separate placements – C.M.S.T. with kinship placement, and T.M. and M.M. in foster placement.

[9] Mother testified she contacted a DCS attorney in December 2016 and asked the attorney to help Mother find an inpatient substance abuse treatment center. Mother was placed at Serenity House and engaged in residential treatment until February 2017, when Serenity House's administrator had a medical emergency out of town and was unable to manage the facility. Mother immediately contacted FCM Lambeck, who provided Mother with a list of inpatient treatment facilities, but FCM Lambeck testified it was Mother's "responsibility

to get into those places." (*Id.* at 77.)[6] Mother moved in with her father and lost her job due to lack of transportation.

[10] In June 2017, DCS filed petitions to terminate Mother's and Father's parental rights to their respective children. In July 2017, while with the father of M.M. and T.M., Mother was arrested for possession of paraphernalia and tested positive for methamphetamine. The arrest violated Mother's probation on another charge, so she was taken into custody. At the time of the termination hearing, Mother was housed at the Spencer County Jail, but she allegedly was scheduled to be released shortly after the hearing. Father was also housed at the Spencer County Jail at the time of the termination proceedings, and he testified he was scheduled for release on September 26, 2018.

[11] In August 2017, Te.C. and Ta.C., Children's respective paternal grandmothers, filed a motion to intervene, seeking to have Children placed with either paternal grandmother. Those requests were denied.[7] On August 15 and September 12, 2017, the trial court held evidentiary hearings regarding the termination petitions. On January 8, 2018, the trial court issued orders terminating Mother's and Father's parental rights to their respective children.

---

[6] FCM Lambeck testified DCS could refer parents to outpatient, but not inpatient, counseling. Additionally, FCM Lambeck testified DCS could not help parents find places to live, except to give Mother a list of available places to stay or rent.

[7] It is unclear why the trial court denied Te.C.'s and Ta.C.'s requests to intervene.

[12] Mother and Father both timely appealed the termination decisions. On June 26, 2018, DCS filed a motion for remand[8] or, in the alternative, a new briefing schedule. On July 5, 2018, this court granted DCS's motion for a new briefing schedule and held in abeyance the issue of remand to be determined by the writing panel.[9]

# Discussion and Decision

[13] We review termination of parental rights with great deference. *In re K.S., D.S., & B.G.*, 750 N.E.2d 832, 836 (Ind. Ct. App. 2001). We will not reweigh evidence or judge credibility of witnesses. *In re D.D.*, 804 N.E.2d 258, 265 (Ind. Ct. App. 2004), *trans. denied*. Instead, we consider only the evidence and reasonable inferences most favorable to the judgment. *Id.* In deference to the juvenile court's unique position to assess the evidence, we will set aside a judgment terminating a parent's rights only if it is clearly erroneous. *In re L.S.*, 717 N.E.2d 204, 208 (Ind. Ct. App. 1999), *reh'g denied*, *trans. denied*, *cert. denied* 534 U.S. 1161 (2002).

---

[8] We note this case was referenced in a July 9, 2018, order granting a DCS motion to remand, which is attached as Exhibit A to this opinion. In the order, our Court formally admonished DCS "for its failure to afford litigants through this state the due process they are owed." (Ex. A at 2.) Further, our Court reminded trial courts "of their duty to ensure that litigants' due process rights are not violated. Given the fundamental due process rights at issue in termination of parental rights cases, affording litigants these fundamental due process rights is essential, including not only the litigants but also their children." (*Id.*) We join in those sentiments, especially considering the multiple due process and ethical violations present in this case.

[9] We deny DCS's motion for remand in an order issued contemporaneously with this opinion.

"The traditional right of parents to establish a home and raise their children is protected by the Fourteenth Amendment of the United States Constitution." *In re M.B.*, 666 N.E.2d 73, 76 (Ind. Ct. App. 1996), *trans. denied*. A trial court must subordinate the interests of the parents to those of the children, however, when evaluating the circumstances surrounding a termination. *In re K.S.*, 750 N.E.2d at 837. The right to raise one's own children should not be terminated solely because there is a better home available for the children, *id.*, but parental rights may be terminated when a parent is unable or unwilling to meet parental responsibilities. *Id.* at 836.

In a termination of parental rights proceeding, parents have certain due process rights:

> When a State seeks to terminate the parent-child relationship, it must do so in a manner that meets the requirements of the due process clause. *Santosky v. Kramer*, 455 U.S. 745, 102 S. Ct. 1388, 71 L.Ed.2d 599 (1982). Although due process has never been precisely defined, the phrase embodies a requirement of "fundamental fairness." *E.P. v. Marion County Office of Family & Children*, 653 N.E.2d 1026, 1031 (Ind. Ct. App. 1995) (quoting *Lassiter v. Dep't of Social Servs.*, 452 U.S. 18, 26, 101 S. Ct. 2153, 68 L.Ed.2d 640 (1981)). Citing *Mathews v. Eldridge*, 424 U.S. 319, 96 S. Ct. 893, 47 L.Ed.2d 18 (1976), this court has recently acknowledged that the nature of the process due in parental rights termination proceedings turns on a balancing of three factors: (1) the private interests affected by the proceeding, (2) the risk of error created by the State's chosen procedure, and (3) the countervailing governmental interest supporting use of the challenged procedure. *A.P. v. Porter County Office of Family and Children*, 734 N.E.2d 1107 (Ind. Ct. App. 2000)[, *reh'g denied*].

*J.T. v. Marion Cty. Office of Family & Children*, 740 N.E.2d 1261, 1264 (Ind. Ct. App. 2000), *reh'g denied, trans. denied, abrogated on other grounds by Baker v. Marion Cty. Office of Family & Children*, 810 N.E.2d 1035, 1041 (Ind. 2004) (abrogated regarding sufficiency of counsel). In addition, "procedural irregularities in a CHINS proceedings [sic] may be of such import that they deprive a parent of procedural due process with respect to the termination of his or her parental rights." *A.P.*, 734 N.E.2d at 1112-13.

[16] Here, the trial court found, regarding the procedural difficulties in the underlying CHINS cases:

> This case involved 5 FCMs and 4 attorneys for the DCS. Two FCMs were fired during the pendency of this case based on their behavior during this case. The parents have argued that this caused them to fail. One could speculate what might have happened had this case been handled properly by one FCM. That speculation could be that that Mother's trial home visit would have occurred earlier than July 2016 and would have been successful with the Chins [sic] case being dismissed. However, the Court should not and cannot make such a speculation, nor should the Court allow those facts to influence its decision. The Court argues [sic] that the chaotic way this case was handled by DCS, especially the actions of the two FCMs who were fired, contributed to this case not progressing the way it could have. However, that is not the deciding factor.

(Mother's App. Vol. II at 118.)[10] We cannot agree that the egregious behavior of some of the DCS employees did not contribute to Mother's and Father's non-compliance with some services.

[17] Father's testimony that FCM Ginanni told him to discontinue services and seemingly accelerated the visitation and home placement schedule for C.M.S.T., while denying similar escalation of visitation to Mother is just one of many instances that lead us to believe the chaotic and unprofessional handling of this case violated Mother's and Father's due process rights. The State concedes this violation of due process.

# Conclusion

[18] In light of the unusual and alarming circumstances that occurred in the underlying CHINS cases, we reverse the termination of Mother's and Father's parental rights to their respective children. We remand to the trial court for reinstatement of the CHINS cases, a re-examination of the requirements for reunification, and a revised dispositional order outlining the services Mother and Father must complete to reunify with their respective children.

[19] Reversed and remanded.

---

[10] The orders regarding each child have almost identical language. We cite to the trial court's order terminating Mother's and Father's parental rights to C.M.S.T.

Baker, J., and Robb, J., concur.

**EXHIBIT A**

# COURT OF APPEALS OF INDIANA

Termination:

A.A.,

*Appellant,*

  v.

Indiana Department of Child Services,

*Appellee.*

Court of Appeals Case No. 18A-JT-527



**FILED**

Jul 09 2018, 3:46 pm

**C L E R K**
Indiana Supreme Court
Court of Appeals
and Tax Court

## Order

[1] Appellant's Brief and Appendix were filed on May 4, 2018.  On May 31, 2018, the Court ordered Appellee Indiana Department of Child Services ("DCS") to file its brief by June 18, 2018.  Instead of filing a brief, DCS, by counsel, has filed a Verified Motion to Remand, or in the Alternative, a New Briefing Schedule.  In the motion, DCS essentially concedes that Appellant was not provided with adequate notice of the termination of parental rights hearing and that the trial court violated Appellant's due process rights when it defaulted her while she was present in the court's waiting room but excluded from the actual courtroom.  DCS asks that the case be dismissed without prejudice and remanded to the trial court for further proceedings consistent with due process.  DCS alleges that Appellant does not object to remand.

[2] Over the past six (6) months, DCS has filed eight (8) motions to remand that are substantively similar to the motion at issue here.  *See Termination:  S.T. v. Indiana Dep't of Child Services*, No. 48A02-1709-JT-2094; *Termination:  T.Z. v. Indiana Dep't of Child Services*, No. 79A02-1710-JT-2406; *Termination:  K.P. v. Indiana Dep't of Child Services*, No. 53A05-1712-JT-2830; *Termination:  N.L. v. Indiana Dep't of Child Services*, No. 18A-JT-94; *Termination:  A.B. v. Indiana Dep't of Child Services*, No. 18A-JT-170; *Termination:  C.S., et al. v. Indiana Dep't of Child Services*, No. 18A-JT-280; *Termination:  J.F., et al. v. Indiana Dep't of Child Services*,

No. 18A-JT-341; *Termination: L.R. v. Indiana Dep't of Child Services*, No. 18A-JT-529. This is the ninth such motion filed by DCS, and the Court is aware of a tenth motion that has been filed in Cause Number 18A-JT-530. The motions are always filed after Appellant has filed their brief. In these motions, DCS essentially concedes that Appellant has either not been provided with adequate notice or that their due process rights have been violated. DCS then, as in this case, requests that the matter be remanded to the trial court for further proceedings consistent with due process.

[3] It is not clear why DCS has suddenly chosen to file motions to remand in these cases rather than file a brief. The result of this, though, is that the Court has primarily dealt with these issues through its orders and not in a formal opinion. While the orders of this Court carry weight, they do not carry the weight or the effect that an opinion from this Court does. By filing a motion to remand, DCS has successfully avoided defending repeated, significant violations of due process in termination of parental rights cases.

[4] The increasing frequency of these motions suggest that there are repeated, significant violations of due process occurring in termination of parental rights cases throughout this state. This is a disturbing trend given the fundamental rights at issue in these types of cases. *See In re Adoption of O.R.*, 16 N.E.3d 965, 972 (Ind. 2014) (noting that the Fourteenth Amendment to the United States Constitution protects the rights of parents to establish a home and raise their children, that parents have a fundamental liberty interest in the care, custody, and control of their children, and that the parent-child relationship is one of the most valued relationships in our culture).

[5] While the Court commends DCS for essentially conceding error in these cases, the Court is obligated to formally admonish DCS for its failure to afford litigants throughout this state the due process rights they are owed. Furthermore, the Court also reminds the trial courts throughout this state of their duty to ensure that litigants' due process rights are not violated. Given the fundamental due process rights at issue in termination of parental rights cases, affording litigants these fundamental due process rights is essential, including not only the litigants but also their children.

[6] Having reviewed the matter, the Court finds and orders as follows:

1. Pursuant to Appellate Rule 37, Appellee's Verified Motion to Remand is granted. This appeal is dismissed without prejudice and remanded to the trial court for further proceedings consistent with due process.

2. Appellant may, after filing a new notice of appeal, raise the issues Appellant would have raised in this appeal along with any new issues created by the trial court's ruling(s) on remand.

3. The Court directs that this order should be published. The Clerk of this Court is directed to send copies of this order to West/Thomson Reuters, LexisNexis, and all other sources to which decisions/opinions of this Court are normally sent.

4. The Clerk of this Court is directed to send a copy of this order to the parties, Judge Brent J. Niemeier of the Vanderburgh Superior Court, Magistrate Renee A. Ferguson of the Vanderburgh Superior Court, the Vanderburgh Circuit and Superior Courts Clerk, Indiana Attorney General Curtis Hill, and Terry J. Stigdon, Director of the Indiana Department of Child Services.

5. The Vanderburgh Circuit and Superior Courts Clerk is directed to file a copy of this order under Cause Numbers 82D04-1711-JT-2195, 82D04-1711-JT-2196, 82D04-1711-JT-2197, and 82D04-1711-JT-2198, and, pursuant to Indiana Trial Rule 77(D), the Clerk shall place the contents of this order in the Record of Judgments and Orders.

Ordered _____7/9/2018_____

Mathias, J., Darden, Friedlander, Sr.JJ., concur.

For the Court,

*Nancy Harris Vaidik*
_____
Chief Judge