## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Feb 07 2020, 10:16 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Amanda McIlwain
Legal Aid Corp. of Tippecanoe County
Lafayette, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Natalie F. Weiss
Robert J. Henke
Deputy Attorneys General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

In re the Termination of the Parent-Child Relationship of S.W. and B.W. (Minor Children),

T.H. (Mother),

*Appellant-Respondent,*

v.

Indiana Department of Child Services,

*Appellee-Petitioner.*

February 7, 2020

Court of Appeals Case No. 19A-JT-1899

Appeal from the Tippecanoe Superior Court

The Honorable Faith A. Graham, Judge

Trial Court Cause Nos.
79D03-1902-JT-23
79D03-1902-JT-24

**Mathias, Judge.**

[1] T.H. ("Mother") appeals the Tippecanoe Superior Court's order terminating her parental rights to her minor children, S.W. and B.W. Mother argues that the trial court's order is not supported by sufficient evidence and that her due process rights were violated because she was not provided with therapeutic services.

[2] We affirm.

## Facts and Procedural History

[3] Mother is married to B.J.W. ("Father"),[1] and they have two children: S.W. born in October 2015 and B.W. born in December 2016. The Tippecanoe County Department of Child Services ("DCS") received a report on November 25, 2017, alleging neglect of the children due to substance abuse. On that date, an anonymous person reported to 911 that Mother was suffering from an overdose. When law enforcement arrived, the front door was open, and Mother was unconscious and not breathing. Two-year-old S.W. was watching a movie in her room, and eleven-month-old B.W. was in a crib. There were various unsafe items in the crib, and the oven was turned on.

[4] Mother was revived with two doses of Narcan and transported to the hospital. Eventually, law enforcement personnel learned that Christopher McCollum

---

[1] Both parties testified at the fact-finding hearing that they intend to dissolve their marriage. Due to incarceration and other marital issues, they did not reside in the same household at all times during these proceedings. Father was charged with and incarcerated for numerous offenses during this case, including a domestic battery charge against Mother that occurred on or about November 16, 2017. Father's parental rights to the children were also involuntarily terminated in these proceedings. Father does not appeal.

provided heroin to Mother, which they used together. He reported Mother's overdose to 911. Mother was charged with maintaining a common nuisance and neglect of a dependent.

[5] The children were placed with paternal grandmother and step-grandfather. DCS filed a petition alleging that they were Children In Need of Services ("CHINS"), and a dispositional order was issued in February 2018. Mother was ordered to complete a substance abuse assessment and treatment, random drug screening, a mental health assessment, domestic violence victim services, individual therapy, therapy with Father, and parenting time.

[6] Mother generally complied with services during the first few months of the CHINS proceedings. She completed a substance abuse assessment in February 2018, and her random drug screens were negative. In April 2018, Mother completed a mental health assessment and was successfully discharged from a domestic violence victim class. Mother had stable housing and was participating in supervised parenting time with the children. Mother began a trial home visit with the children on June 6, 2018.

[7] However, Mother began to refuse drug screens and failed to attend therapy in May and June 2018. She also failed to attend a case management session in July 2018. On July 9, 2018, DCS received a report that Mother's babysitter tested positive for marijuana. In August 2018, Mother was observed with bruises on her arms and face. On August 30, 2018, Mother's hand was injured when Father pushed her. DCS received additional reports of domestic violence

allegations in September 2018. Mother was referred to additional domestic violence services, but she did not complete the referral.

[8] During the trial home visit, DCS performed unannounced drop-in visits at Mother's home. Safety issues were noted during these visits, including medications that were accessible to the children and exposure to unauthorized individuals. During a visit on October 1, 2018, an unknown naked male was found hiding in Mother's closet. Mother refused to identify the man to the visit facilitator.

[9] On October 17, 2018, the trial home visit ended because Mother continued to allow unauthorized individuals into her home causing safety concerns for the children, and she was dishonest with DCS service providers. After the children were removed from her home, Mother attended only one visitation in November 2018. Mother was unsuccessfully discharged from visitation in December 2018 due to her lack of contact with DCS. Mother resumed therapeutically supervised visitation in March 2019, but only attended one visit. She was discharged again after she failed to attend two scheduled visits. The children have not visited with Mother since March 2019.

[10] Mother had a traumatic childhood and was placed in foster care. She has suffered from substance abuse and mental health issues since childhood. Mother was referred to therapy in this case but discharged three months later for lack of participation. Mother does not believe she benefits from therapy and "so she just stops going." Appellant's App. p. 20.

[11] After the trial home visit with the children ended in October 2018, Mother was admitted to Sycamore Springs mental health facility for two weeks. She was diagnosed with bipolar disorder and borderline personality disorder in addition to depression and anxiety. Mother was readmitted three days after her release for suicidal ideation. She was admitted to the facility three additional times in 2019. Mother was provided with a second referral for therapy in February 2019, but she was discharged one month later for lack of participation. Mother also does not take medications as prescribed.

[12] In October 2018, Mother tested positive for morphine. In March 2019, she tested positive for fentanyl. Mother's other random drug screens were negative for the presence of illegal substances, but Mother failed to submit to all requested drug screens.

[13] Throughout these proceedings, Mother did not make any progress toward maintaining employment. And she admitted she is unable to so do. *Id*. During the CHINS case, Mother's great grandparents paid the rent for her home. However, they ceased paying her rent in October 2018, and Mother was evicted in December 2018. Mother was incarcerated from December 6, 2018 to January 24, 2019.

[14] On February 21, 2019, DCS filed a petition to terminate Mother's parental rights to the children. Shortly after the petition was filed, DCS discovered that Mother was associating with men who had serious criminal records. Mother had bruises and sores on her body in April 2019. Mother reported that she was

"selling herself for money" and living in a "trap house." Appellant's App. p. 22; Ex. Vol. 3, p. 148.

[15] In May 2019, Mother was homeless and involved in a relationship with a man who was incarcerated for a drug offense. Mother was pregnant with his child. Mother had also violated probation, and there were two outstanding warrants for her arrest. Mother fled from Tippecanoe County to avoid arrest. She turned herself in to authorities nine days before the fact-finding hearing was held in this case.

[16] The fact-finding hearing was held on May 15, 2019. At the hearing, Mother admitted that she was not in a position to be able to care for her children. Tr. p. 190. But she did not want her parental rights terminated. The family case manager and court-appointed special advocate ("CASA") testified that termination of Mother's parental rights is in the children's best interests. Tr. pp. 162, 180. On July 23, 2019, the trial court entered its order terminating Mother's parental rights to S.W. and B.W. Mother now appeals.

## Standard of Review

[17] Indiana appellate courts have long had a highly deferential standard of review in cases involving the termination of parental rights. *In re D.B.*, 942 N.E.2d 867, 871 (Ind. Ct. App. 2011). We neither reweigh the evidence nor assess witness credibility. *Id.* We consider only the evidence and reasonable inferences favorable to the trial court's judgment. *Id.* In deference to the trial court's unique position to assess the evidence, we will set aside a judgment terminating

a parent-child relationship only if it is clearly erroneous. *Id.* Clear error is that which leaves us with a definite and firm conviction that a mistake has been made. *J.M. v. Marion Cty. Off. of Family & Children*, 802 N.E.2d 40, 44 (Ind. Ct. App. 2004), *trans. denied.*

[18] Mother does not challenge any of the trial court's factual findings as being clearly erroneous. We therefore accept the trial court's findings as true and determine only whether these unchallenged findings are sufficient to support the judgment. *In re A.M.*, 121 N.E.3d 556, 562 (Ind. Ct. App. 2019), *trans. denied; see also T.B. v. Ind. Dep't of Child Servs.*, 971 N.E.2d 104, 110 (Ind. Ct. App. 2012) (holding that when the trial court's unchallenged findings support termination, there is no error), *trans. denied.*

## I. Clear and Convincing Evidence

[19] Mother claims that the trial court's order involuntarily terminating her parental rights is not supported by clear and convincing evidence. Indiana Code section 31-35-2-4(b)(2) provides that a petition to terminate parental rights must allege:

> (B) that one (1) of the following is true:
>
> > (i) There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.
>
> > (ii) There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.

> (iii) The child has, on two (2) separate occasions, been adjudicated a child in need of services;
>
> (C) that termination is in the best interests of the child; and
>
> (D) that there is a satisfactory plan for the care and treatment of the child.

[20] DCS must prove each element by clear and convincing evidence. Ind. Code § 31-37-14-2; *In re G.Y.*, 904 N.E.2d 1257, 1260 (Ind. 2009). Because Indiana Code subsection 31-35-2-4(b)(2)(B) is written in the disjunctive, the trial court is required to find that only one prong of subsection 4(b)(2)(B) has been established by clear and convincing evidence. *In re A.K.*, 924 N.E.2d 212, 220 (Ind. Ct. App. 2010).

[21] Clear and convincing evidence need not establish that the continued custody of the parent is wholly inadequate for the child's very survival. *Bester v. Lake Cty. Off. of Family & Children*, 839 N.E.2d 143, 148 (Ind. 2005). It is instead sufficient to show by clear and convincing evidence that the child's emotional and physical development are put at risk by the parent's custody. *Id.* If the court finds the allegations in a petition are true, the court shall terminate the parent-child relationship. Ind. Code § 31-35-2-8(a).

[22] The purpose of terminating parental rights is not to punish parents but instead to protect their children. *In re S.P.H.*, 806 N.E.2d 874, 880 (Ind. Ct. App. 2004). Although parental rights have a constitutional dimension, the law allows for their termination when the parties are unable or unwilling to meet their responsibilities as parents. *Id.* Indeed, parental interests must be subordinated to

the child's interests in determining the proper disposition of a petition to terminate parental rights. *In re G.Y.*, 904 N.E.2d at 1259.

[23]     Mother argues that the trial court clearly erred by concluding that there was a reasonable probability that the conditions that resulted in the children's removal from her care, or the reasons for their continued placement outside her home, would not be remedied. When considering whether DCS has proven this factor by clear and convincing evidence, the trial court must determine a parent's fitness to care for the child at the time of the termination hearing while also taking into consideration evidence of changed circumstances. *A.D.S. v. Ind. Dep't of Child Servs.*, 987 N.E.2d 1150, 1156–57 (Ind. Ct. App. 2013), *trans. denied*. The trial court may disregard efforts made only shortly before termination and give more weight to a parent's history of conduct prior to those efforts. *In re K.T.K.*, 989 N.E.2d 1225, 1234 (Ind. 2013).

[24]     The trial court concluded that Mother has not "demonstrated the ability or willingness to make lasting changes from past behaviors" and "[t]here is no reasonable probability that [Mother] will be able to maintain stability to care and provide for SW and BW." Appellant's App. p. 23. The children were removed from Mother's care due to her substance abuse. And the children were removed from the temporary trial home visit because Mother allowed unauthorized individuals into her home, which caused safety concerns for the children particularly given Mother's dishonesty with service providers. Mother had two positive drug tests and refused to submit to additional drug screens when they were requested. Although Mother participated in therapy, substance

abuse treatment, and domestic violence victim's treatment, she did not successfully complete all of the referrals. Mother lacked a stable home for the last three months of these proceedings and admitted at the fact-finding hearing that she did not have a present ability to care for her children. Mother admitted to selling herself for money. She also fled the Lafayette area prior to the fact-finding hearing because there were two active warrants for her arrest. And she was involved in a romantic relationship with a man who was incarcerated on drug charges.

[25] Mother has not addressed her substance abuse and mental health issues and admits that she does not have the ability to provide a stable home for her children. For all of these reasons, we conclude that clear and convincing evidence supports the trial court's determination that there is a reasonable probability that the conditions that resulted in the children's removal from Mother's care, or the reasons for their continued placement outside her home, would not be remedied.[2]

[26] Mother also argues that the trial court clearly erred in concluding that termination of her parental rights was in the children's best interests. In determining what is in the best interests of a child, the trial court must look beyond the factors identified by DCS and look to the totality of the evidence.

---

[2] Because Indiana Code subsection 31-35-2-4(b)(2)(B) is written in the disjunctive, we decline to address Mother's additional claim that DCS failed to prove that continuation of the parent-child relationship threatens the children's well-being. *In re A.K.*, 924 N.E.2d at 220.

*A.D.S.*, 987 N.E.2d at 1158. In so doing, the trial court must subordinate the interests of the parent to those of the child and need not wait until the child is irreversibly harmed before terminating the parent-child relationship. *Id.* Moreover, a recommendation by the case manager or a child advocate is sufficient to show by clear and convincing evidence that termination is in the child's best interests. *Id.* at 1158–59.

[27] Mother argues that termination of her parental rights is not in the children's best interests because they share a strong bond. Mother loves her children, and during supervised visitations, Mother's interaction with the children was appropriate.

[28] But Mother has only demonstrated that she is able to sustain a safe and appropriate environment for her children for a short period of time. Mother's instability is also reflected in the fact that after the trial home visit ended, Mother did not consistently participate in visitation with the children. The children need stability that Mother admittedly cannot provide. Finally, both the family case manager and CASA testified that termination of Mother's parental rights was in the children's best interests. Tr. pp. 162, 180. For all of these reasons, we conclude that the trial court's finding that termination of Mother's parental rights is in the children's best interests is supported by clear and convincing evidence.

## II. Due Process

[29] Mother also argues that her due process rights were violated throughout these proceedings.[3] When the State seeks to terminate parental rights, "it must do so in a manner that meets the requirements of due process." *J.K. v. Marion Cty. Dep't of Child Servs.*, 30 N.E.3d 695, 699 (Ind. 2015) (quotations and citations omitted). Whether due process has been afforded in termination proceedings is determined by balancing the "three distinct factors" specified in *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976): the private interests affected by the proceeding; the risk of error created by the State's chosen procedure; and the countervailing governmental interest supporting use of the challenged procedure. *A.P. v. Porter Cty. Off. of Family & Children*, 734 N.E.2d 1107, 1112 (Ind. Ct. App. 2000), *trans. denied.*

> The private interest affected by the proceeding is substantial—a parent's interest in the care, custody, and control of his or her child. And the State's interest in protecting the welfare of a child is also substantial. Because the State and the parent have substantial interests affected by the proceeding, we focus on the risk of error created by DCS's actions and the trial court's actions.

---

[3] Mother does not state whether her due process claim is pursuant to the federal or state constitution—or both. Regardless, the due process analysis under each constitution is the same. *In re D.H.*, 119 N.E.3d 578, 586 n.16 (Ind. Ct. App. 2019) (citing *Cooper v. State*, 760 N.E.2d 660, 666 (Ind. Ct. App. 2001), *trans. denied*), *trans. denied*.

*S.L. v. Ind. Dep't of Child Servs.*, 997 N.E.2d 1114, 1120 (Ind. Ct. App. 2013) (citing *In re C.G.*, 954 N.E.2d 910, 917 (Ind. 2011)).

[30]　DCS must "make reasonable efforts to preserve and reunify families." Ind. Code § 31-34-21-5.5(b). And, "due process protections at all stages of CHINS proceedings are vital because every CHINS proceeding has the potential to interfere with the rights of parents in the upbringing of their children." *In re G.P.*, 4 N.E.3d 1158, 1165 (Ind. 2014) (quotations and citations omitted). "[T]hese two proceedings—CHINS and TPR—are deeply and obviously intertwined to the extent that an error in the former may flow into and infect the latter[.]" *Id.*

[31]　But the "failure to provide services does not serve as a basis on which to directly attack a termination order as contrary to law." *In re H.L.*, 915 N.E.2d 145, 148 n.3 (Ind. Ct. App. 2009); *see also In re E.E.*, 736 N.E.2d 791, 796 (Ind. Ct. App. 2000) ("[T]he provision of family services is not a requisite element of our parental rights termination statute, and thus, even a complete failure to provide services would not serve to negate a necessary element of the termination statute and require reversal."). Furthermore, a parent may not sit idly by without asserting a need or desire for services and then successfully argue that she was denied services to assist her with her parenting. *In re B.D.J.*, 728 N.E.2d 195, 201 (Ind. Ct. App. 2000).

[32]　First, Mother argues that her rights were violated because "DCS failed [to] make a new referral for intensive therapy after [M]other was discharged in June

2018" contrary to the trial court's order to DCS to "make a referral, or help Mother enroll in, individual counseling to address domestic violence issues and decision making." Appellant's Br. at 28 (citing Ex. Vol., 1, p. 86). Next, Mother notes that DCS never made a referral for couples therapy or a psychological evaluation. Finally, Mother claims that when she began to struggle in August and September 2018, DCS "failed to look at the reasons why Mother was struggling and failed to adjust the services appropriately." *Id.* at 29.

[33] During the CHINS proceedings, Mother participated in therapy, completed mental health and substance abuse assessments, completed a domestic violence victim class, submitted to random drug screens, participated in home-based case management, and had supervised visitation with the children. As a result of Mother's participation in services and visitation, the children were returned to her care for a temporary trial home visit. But when the children were returned to her home, Mother's participation in services became less consistent. She stopped going to therapy and would either cancel the appointment or fail to attend without notice.

[34] In October 2018, the children were removed from Mother's care because she allowed unauthorized persons into her home causing concern for the children's safety and was dishonest with service providers. Shortly before the children were removed, Mother was referred for therapy at Counseling Partners, but Mother did not participate in therapy or complete the referral. DCS also recommended that Mother complete a new mental health assessment, but Mother declined to do so. DCS re-enrolled Mother in a domestic violence class

due to evidence of abuse in August and September 2018. The provider contacted Mother, but Mother did not follow up with the provider. Mother was incarcerated on December 6, 2018. She was released shortly before DCS filed the petition to terminate her parental rights in February 2019.

[35] Mother failed to participate in and benefit from the services provided and complains that she should have been offered more services. DCS offered Mother sufficient services in its attempt to preserve and reunify Mother's family. Mother has not established that DCS engaged in conduct that affected Mother's ability to participate in and complete services aimed at reunifying her with her children. *Cf. In re C.M.S.T.*, 111 N.E.3d 207, 213 (Ind. Ct. App. 2018) (holding that "the chaotic and unprofessional handling" of a CHINS case violated the parents' due process rights, requiring reversal of the termination order); *A.P.*, 734 N.E.2d at 1117 (finding parents' due process rights were violated in a termination action where DCS made multiple procedural errors, such as failing to provide parents with copies of case plans and filing CHINS and termination petitions that did not meet statutory requirements). For all of these reasons, Mother has not established that her due process rights were violated.

# Conclusion

[36] Clear and convincing evidence supports the trial court's order involuntarily terminating Mother's parental rights to her children. And Mother has not established that her due process rights were violated in the termination and underlying CHINS proceedings.

[37]    Affirmed.

Kirsch, J., and Bailey, J., concur.