## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Jun 18 2020, 6:10 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT
(FATHER)

Cara Schaefer Wieneke
Brooklyn, Indiana

ATTORNEY FOR APPELLANT
(MOTHER)

Mark Small
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:
INDIANA DEPARTMENT OF
CHILD SERVICES

Curtis T. Hill, Jr.
Attorney General of Indiana

Robert J. Henke
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

In the Matter of the Involuntary Termination of the Parent-Child Relationship of: Mi.T. and Ma.T. (Minor Children),

and

G.T. (Mother) and S.T. (Father),

*Appellants-Respondents,*

v.

The Indiana Department of Child Services,

*Appellee-Petitioner.*

June 18, 2020

Court of Appeals Case No. 20A-JT-181

Appeal from the Greene Circuit Court

The Honorable Erik C. Allen, Judge

Trial Court Cause No. 28C01-1904-JT-12 28C01-1904-JT-13

**Tavitas, Judge.**

# Case Summary

[1] G.T. ("Mother") and S.T. ("Father") appeal from the termination of their parental rights to Ma.T. and Mi.T. ("the Children"). We affirm.

# Issues

[2] Mother and Father separately allege denials of due process.

## Facts

Mother and Father are the biological parents of twins, Ma.T. and Mi.T., who were born in November 2015.[1] On July 21, 2017, and July 22, 2017, the Greene County Office of the Department of Child Services ("DCS") received allegations of: (1) domestic violence; (2) Mother's abuse of methamphetamine; (3) Father's abuse of Xanax, marijuana, and prescription pain medication; (4) Mother's mental health issues, including a July 2017 suicide attempt when the Children were present in the home; and (5) neglect. Father subsequently admitted that he was also abusing methamphetamine.

DCS instituted an informal adjustment, during which the Children remained in the care of Mother and Father. In August 2017, DCS deemed the informal adjustment to be a failure. Mother was "screening negative in the beginning"; however, Father continued to test positive for methamphetamine. Tr. Vol. I-II p. 147. After Mother relapsed during the informal adjustment period, DCS removed the Children from the home, and the Children have not since returned to Mother's or Father's care.

DCS filed petitions alleging that the Children were children in need of services ("CHINS") on November 13, 2017. On March 5, 2018, the trial court conducted a fact-finding hearing and adjudicated the Children as CHINS based

---

[1] Mother and Father are divorced and were not in a relationship at the time of the termination hearing.

on Mother's and Father's ongoing substance abuse, failed drug tests, and failure to maintain sobriety.

[6] Pursuant to the trial court's dispositional order of April 5, 2018, Mother and Father were each required to: (1) abstain from consuming alcohol or ingesting controlled substances; (2) undergo a parenting assessment and comply with ensuing recommendations; (3) complete substance abuse assessments; (4) submit to random drug tests; (5) maintain stable and secure home environments free of abuse or neglect; and (6) provide effective caregiving. It is undisputed that Mother and Father abused controlled substances and/or prescription pain medication throughout the majority of this matter.

[7] During the pendency of this action, DCS briefly referred Mother to individual therapy for her chronic "mild to severe" depression. *Id*. at 102. Due to a change in service provider contracts, DCS did not refer Mother to therapy to address her mental health for a one-year period during the pendency; during that period, DCS referred Mother to therapy for substance abuse alone. Following Mother's suicide attempt, Mother "did therapy and worked through" her suicidal ideations. *Id*. With respect to Mother's mental health, Mother is also under a doctor's care; takes prescription medication; "attend[s] therapy monthly"; and undergoes monthly mental health examinations. *Id*.

[8] Also during the pendency of this matter, Mother and Father resisted DCS's referrals for certain services. Mother: (1) refused at least one drug screen; (2) cancelled multiple Child and Family Team ("CFT") meetings; (3) missed at

least one supervised visit because she was sick due to substance abuse; and (4) opposed DCS's referral to the Hamilton Center for a psychological evaluation. Mother rejected DCS's repeated efforts to enroll her in intensive outpatient ("IOP") drug rehabilitation programming. *See id.* at 131-32 (testimony that Mother insisted she could fight her methamphetamine addiction on her own).

[9] On one such occasion, in 2019, family case manager ("FCM") Carrie Goodwin took Mother to an immediately-available drug rehabilitation facility, with the costs to be borne by DCS; Mother refused to attend. At the time, Mother was residing in a house that lacked "power or [running] water"; however, Mother rejected the drug rehabilitation facility because it was, in her view, "very dirty, unsanitary"; "looked like a penitentiary"; and was "more of a rehabilitation [facility] for [ ] criminal charges rather than [for] rehabilitation for substance abuse[.]" *Id.* at 100-01, 122, 133, 151. Mother insisted on attending a drug rehabilitation facility of her own choosing, despite being told that enrollment in the other facilities was subject to placement on waiting lists. After Mother rejected DCS's drug rehabilitation referral, DCS declined to make further drug rehabilitation referrals for Mother.

[10] Likewise, Father has also rejected certain DCS-referred services. *Id.* at 170. At one stage of the CHINS period, DCS referred Father to IOP drug rehabilitation services, which Father rejected because he "didn't need it." *Id.* at 58. Also, Father was admitted to Tara Treatment Center, a substance abuse facility, where Father completed the treatment program for methamphetamine addicts

without disclosing during intake that Father also abused prescription medication.

[11] Further, Mother and Father have jointly rejected services. Mother and Father "declined" the first four weeks of supervised visitation because the Children's initial kinship placement appears to have allowed Mother and Father to visit with the Children and to skirt DCS's visitation parameters. *Id*. at 170.

[12] On April 16, 2019, DCS filed a petition to terminate Mother's and Father's parental rights. The trial court conducted an evidentiary hearing on August 22, 2019, and September 12, 2019. DCS presented evidence that Mother and Father have continued to use illegal controlled substances and/or abused prescription medication throughout this action. FCM Goodwin testified that: (1) DCS was involved in the matter due to Mother's and Father's substance abuse; (2) DCS referred Mother and Father to drug rehabilitation services; and (3) Mother and Father "are still impaired by drugs or overly prescribed pain medication." *Id*. at 233. FCM Goodwin also testified that Father's unwillingness to be "honest" with service providers about his addictions significantly reduced the likelihood that referred services could be effective. *See* Tr. Vol. III-IV p. 2. On January 14, 2020, the trial court entered findings of fact and conclusions thereon terminating Mother's and Father's parental rights. Mother and Father now appeal separately.[2]

---

[2] On March 20, 2020, we granted DCS's motion to file a consolidated brief as to Mother and Father.

## Analysis

[13] Mother and Father appeal from the termination of their parental rights. The Fourteenth Amendment to the United States Constitution protects the traditional rights of parents to establish a home and raise their children. *In re K.T.K. v. Indiana Dept. of Child Services, Dearborn County Office,* 989 N.E.2d 1225, 1230 (Ind. 2013). "[A] parent's interest in the upbringing of [his or her] child is 'perhaps the oldest of the fundamental liberty interests recognized by th[e] [c]ourt[s].'" *Id.* (quoting *Troxel v. Granville,* 530 U.S. 57, 65, 120 S. Ct. 2054 (2000)). We recognize, of course, that parental interests are not absolute and must be subordinated to the child's best interests when determining the proper disposition of a petition to terminate parental rights. *Id.* Thus, "'[p]arental rights may be terminated when the parents are unable or unwilling to meet their parental responsibilities by failing to provide for the child's immediate and long-term needs.'" *In re K.T.K.,* 989 N.E.2d at 1230 (quoting *In re D.D.,* 804 N.E.2d 258, 265 (Ind. Ct. App. 2004), *trans. denied*).

[14] When reviewing the termination of parental rights, we do not reweigh the evidence or judge witness credibility. *In re. I.A.,* 934 N.E.2d 1127, 1132 (Ind. Ct. App. 2010). We consider only the evidence and reasonable inferences that are most favorable to the judgment. *Id.* We must also give "due regard" to the trial court's unique opportunity to judge the credibility of the witnesses. *Id.* (quoting Ind. Trial Rule 52(A)).

[15]     Pursuant to Indiana Code Section 31-35-2-8(c), "The trial court shall enter findings of fact that support the entry of the conclusions required by subsections (a) and (b)." Here, the trial court entered findings of fact and conclusions thereon in granting DCS's petition to terminate Mother's and Father's parental rights. When reviewing findings of fact and conclusions thereon entered in a case involving a termination of parental rights, we apply a two-tiered standard of review. First, we determine whether the evidence supports the findings, and second, we determine whether the findings support the judgment. *Id.* We will set aside the trial court's judgment only if it is clearly erroneous. *Id.* A judgment is clearly erroneous if the findings do not support the trial court's conclusions or the conclusions do not support the judgment. *Id.*

[16]     Indiana Code Section 31-35-2-8(a) provides that "if the court finds that the allegations in a petition described in [Indiana Code Section 31-35-2-4] are true, the court shall terminate the parent-child relationship." Indiana Code Section 31-35-2-4(b)(2) provides that a petition to terminate a parent-child relationship involving a child in need of services must allege, in part:

> (A) that one (1) of the following is true:
>
>> (i) There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.
>>
>> (ii) There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.

> (iii) The child has, on two (2) separate occasions, been adjudicated a child in need of services;

> (B) that termination is in the best interests of the child; and

> (C) that there is a satisfactory plan for the care and treatment of the child.

DCS must establish these allegations by clear and convincing evidence. *In re V.A.*, 51 N.E.3d 1140, 1144 (Ind. 2016).

## I.    *Findings*

[17]    We initially note that neither Mother nor Father challenges the trial court's findings as being clearly erroneous.  Any challenge to the trial court's findings is waived.  *See In re B.R.,* 875 N.E.2d 369, 373 (Ind. Ct. App. 2007) (holding, where the mother failed to challenge the trial court's findings, that "[t]o the extent that [the m]other argues that the trial court's findings or conclusions are clearly erroneous, [the m]other has waived this issue by failing to make a cogent argument."); *see* Ind. Appellate Rule 46(A)(8)(a).

## II.    *Due Process*

[18]    Mother and Father each argue that they were denied due process because DCS failed to make reasonable efforts to provide services to assist in reunifying them with the Children. Mother argues that the trial court erred in terminating her parental rights because her underlying mental health condition never was addressed in the DCS-referred services.  Father argues that DCS failed to "refer

Father to an outpatient treatment program" and failed to "provide him with other assistance to treat his opioid addiction." Father's Br. pp. 14-15.

[19]     Neither Mother nor Father asserted due process arguments below. Arguments may not be presented for the first time on appeal. *See In re K.S.*, 750 N.E.2d 832, 834 n.1 (Ind. Ct. App. 2001) (holding that the mother waived the issue concerning the alleged due process violation because the issue was raised for the first time on appeal); *see also Ind. Bureau of Motor Vehicles v. Gurtner*, 27 N.E.3d 306, 311 (Ind. Ct. App. 2015). Thus, these arguments are also waived.

[20]     Mother and Father ask us to consider their due process arguments pursuant to the fundamental error doctrine. "The fundamental error doctrine is a narrow exception to the waiver doctrine and applies to an error that was so egregious and abhorrent to fundamental due process that the trial judge should or should not have acted, irrespective of the parties' failure to object or otherwise preserve the error for appeal." *In Re N.C.*, 56 N.E.3d 65, 69 (Ind. Ct. App. 2016), *trans. denied*. For this Court to overturn a trial court ruling as fundamental error, the error "must be a clearly blatant violation of basic and elementary principles, and the harm or potential for harm therefrom must be substantial and appear clearly and prospectively." *Id*.

[21]     "The Indiana Supreme Court has long recognized that, in 'seeking termination of parental rights,' the DCS has no obligation 'to plead and prove that services have been offered to the parent to assist in fulfilling parental obligations.'" *In re*

*J.W., Jr.*, 27 N.E.3d 1185, 1190 (Ind. Ct. App. 2015) (quoting *S.E.S. v. Grant Cnty. Dep't of Welfare,* 594 N.E.2d 447, 448 (Ind. 1992)).

> . . . [A]lthough "[t]he DCS is generally required to make reasonable efforts to preserve and reunify families during the CHINS proceedings," that requirement under our CHINS statutes "is not a requisite element of our parental rights termination statute, and a failure to provide services does not serve as a basis on which to directly attack a termination order as contrary to law." [S]*ee also Elkins v. Marion Cnty. Office of Family & Children (In re E.E.),* 736 N.E.2d 791, 796 (Ind. Ct. App. 2000) ("even a complete failure to provide services would not serve to negate a necessary element of the termination statute and require reversal."); *Stone v. Daviess Cnty. Div. of Children & Family Servs.*, 656 N.E.2d 824, 830 (Ind. Ct. App. 1995) ("under Indiana law, even a complete failure to provide services cannot serve as a basis to attack the termination of parental rights.") . . . .

*Id.* (citations omitted); *see In re E.E.*, 736 N.E.2d 791, 796 (Ind. Ct. App. 2000) (". . .[E]ven a complete failure to provide services would not . . . negate a necessary element of the termination statute and require reversal.").

[22]     To the extent that Mother's and Father's due process claims hinge upon DCS's alleged failure to provide certain services, such is not a proper basis on which to attack the trial court's termination of their respective parental rights. *See id*. Absent a proper basis upon which to challenge the judgment, Mother and Father cannot demonstrate that the trial court's order of termination implicated "a clearly blatant violation of basic and elementary principles" from which Mother and Father suffered substantial harm or potential for harm. *See N.C.*, 56 N.E.3d at 69. Mother and Father, therefore, have not carried their burden to

establish fundamental error.  Moreover, it appears from the record that DCS's unwillingness to provide certain services stems from Mother's and Father's record of rejecting proffered services at will.

## Conclusion

[23] Neither Mother nor Father was denied due process of law.  The trial court did not commit fundamental error.  We affirm.

[24] Affirmed.

Riley, J., and Mathias, J., concur.